STANFIELD *v.* FRIDDLE.

4—2569

Opinion delivered May 30, 1932.

*Evans & Evans* and *Cochran & Arnett,* for appellants.

*W. L. Kincannon, Rhyne & Shaw* and *Roy D. Campbell,* for appellees.

SMITH, J. Appellee filed in the Logan Circuit Court a petition for a writ of mandamus to compel the treasurer of that county to redeem certain county warrants held by him. Interventions were filed by a number of persons holding county warrants, and various questions as to the validity and priority of these warrants have been raised. It will be unnecessary to recite upon what demands those claims arose, as the court's declarations of law, hereinafter set out, are decisive of the questions involved on this appeal; indeed, as appellant states, the questions for decision are questions of law, and not of fact.

The declarations of law which the appeal challenges read as follows:

"1. That the revenue from all sources during the fiscal year must be allocated to the payment of the indebtedness for that year.

"2. That, if there is not enough revenue to pay all demands for said year, then what are termed statutory claims have preference to be paid first, because this character of expense is necessary to the proper operation of the county affairs.

"3. After paying all statutory claims, the contractual claims are to be paid in the order of their allowance by the county court, but in no case to exceed the appropriations for said year on each fund.

"4. I hold that, in so far as the statutory claims are concerned, they have preference right regardless of the amount appropriated for each fund by the levying court.

"5. All claims allowed in excess of the total revenue from all sources are absolutely illegal and void.

"6. All allowances not in excess of the revenue for any fiscal year are legal and valid, and may be paid out of the revenue of the next fiscal year, provided there is a surplus of revenue over the expenditures for such year."

It is at once apparent that a review of these declarations of law entails a further consideration of the effect of amendment No. 10, heretofore frequently referred to as amendment No. 11 (See 184 Ark. XXIX). We have had frequent occasion to interpret this amendment, and more than a score of these cases are cited in the opinion in the case of *Luter* v. *Pulaski County Hospital Association,* 182 Ark. 1099, 34 S. W. (2d) 770. Many, if not all, of these cases have quoted the provisions of the amendment which relate to the questions here under consideration, and they will not be again quoted; nor will we review those cases. It will suffice to summarize their holdings.

It was said in the case of *Luter* v. *Pulaski County Hospital Association, supra,* that amendment No. 10 must now, since the adoption of amendment No. 17, be construed as it reads literally, that is, that contracts and allowances in any year cannot exceed the revenues of that year, not even for a purpose so necessary as that of building courthouses and jails, nor, as was said in that case, for building a county hospital, and we there expressed our unwillingness to hold that there was any exception for which a county might make a contract in excess of its revenues.

The law may therefore be regarded as definitely settled that any contract entered into or allowance made in excess of the revenues of the year in which the contract was entered into, or the allowance made, is wholly void, and the issuance of county warrants based thereon adds nothing to their validity, as the warrants are also void.

Other constructions of the amendment which are apposite here may be briefly stated.

A county may not incur any obligation in any year which exceeds the revenues of that year, and, if this is done, such obligation is void and cannot be paid out of the revenues of the succeeding year. Those contracts entered into, or allowances made, or warrants issued, which did not exceed the revenues of the year in which they were entered into, made or issued, are valid; all others are void.

The holder of a valid warrant may, by an appropriate action, compel the redemption of his warrant, to the exclusion of an invalid warrant, and he may, if necessary, enjoin the redemption of an invalid warrant. The invalid warrants cannot be received by any collecting officer of the county, and the officer who does receive one does so at his peril, and is not entitled to take credit for it in any settlement of his account, because the warrant is void. It is issued without authority, and the action of a collecting officer in receiving it cannot give it validity. Counties (and cities and towns also) must pay as they go, and can go only so far as they can pay, and they are without power to make or authorize any contract or make any allowance or issue any warrant for any purpose whatsoever in excess of the revenues, from all sources, for the fiscal year in which said contract was entered into, or allowance made, or warrant issued.

None of these statements announce any new interpretation of the amendment, but all have been made one or more times in the numerous cases interpreting the amendment, in a more or less futile attempt to coerce the

fiscal officers of the counties, cities and towns of the State to obey the plain mandate of the Constitution.

It is said that certain fiscal officers of Logan County have interpreted the case of *Polk County* v. *Mena Star Co.*, 175 Ark. 76, 298 S. W. 1002, as authorizing an expenditure in excess of the revenue in certain cases. But we do not think the case is open to that construction. We must read that case in the light of the facts there stated. Polk County had not issued bonds as the amendment authorized. It had an outstanding indebtedness at the time of the adoption of the amendment which had not been paid. Its annual expenditures were less than its annual revenues. The redemption of these outstanding warrants exhausted the county's cash, so that money was not available to redeem warrants issued in the then current year, yet we said that this fact did not affect the validity of such warrants, for the reason that their issuance did not increase the county's debt beyond what it was at the beginning of the fiscal year. In other words, a county might operate, although it could not do so on a cash basis. The inhibition of the amendment was and is that a county should not increase its indebtedness, by appropriating and spending in any fiscal year any sum in excess of the revenues of that year.

It was there contemplated that counties might not have the revenues to pay for all the expenditures which are required or allowed by law to be made, and for the guidance of fiscal officers we declared the priority in which contracts should be entered into and allowances made.

We there quoted the sixth subdivision of § 1982, Crawford & Moses' Digest, which directs the order in which quorum courts shall make appropriations. These items, seven in number, were divided into two classes, of which, as we said in the case of *Worthen* v. *Roots*, 34 Ark. 356: "The first four are of an indispensable nature, essential to the support of the government. They are for services that must be performed, or the business of

the counties must stop. The last three are not supposed to be imposed by necessity, but are matters of contract."

Defining the duties of quorum courts under this statute, limited as it is, of course, by the constitutional amendment, it was there said: "They should first make ample provision for those necessary expenses imposed on the counties by law, including outstanding warrants payable in that year, as, for instance, an installment due for construction of a courthouse; and, after having done this, they are at liberty to make appropriations of part or the whole of the remainder of the revenue for the purposes provided by items 5, 6 and 7, but they cannot exceed the amount of the revenue for the fiscal year," not for items 5, 6 and 7 merely, but for these or any other purpose.

Now this case did decide that those items designated as indispensable must first be paid before other items merely permissible under the law were paid. In other words, counties could not make allowances to cover the permissible items until they had first made allowances for the indispensable items essential to the support of the government. Having made allowances for the indispensable items, allowances could thereafter be made for the permissible items, provided the combined allowances did not exceed the revenues. Those allowances not in excess of revenues were valid; all others were void.

We did not decide in that case, as is here argued, that warrants to be valid must be redeemable in the year of their issuance. The holding in that case, when applied to the facts there stated, is expressly to the contrary. The point decided was that warrants were valid, although they could not be redeemed in the year of their issuance because the redemption of valid warrants issued in the previous year had exhausted the county's cash. Such warrants were valid notwithstanding the fact that they could not be redeemed in the year of their issuance, because their issuance was not in excess of the revenues of the county in the year in which they were issued.

The point primarily involved in the Mena Star case, *supra*, was the right of a county to pay its current bills in the year in which they should be paid, and such bills were and are paid, within the meaning of the constitutional amendment, when a valid allowance thereof is made by the county court, pursuant to which order a valid county warrant is issued.

The case of *Miller* v. *State to use of Woodruff County*, 176 Ark. 889, 1 S. W. (2d) 998, is cited as holding that valid warrants coming over from a previous fiscal year cannot be redeemed until all warrants issued in a particular fiscal year have been first redeemed. But such is not the holding in that case. The trial judge so held, but we reversed that judgment. We there pointed out that in the Mena Star case, *supra*, allowances were made by the county court in the year 1925 which did not equal the revenues of that year, but the redemption of valid outstanding warrants out of the revenues of that year made it impossible to redeem all the claims contracted and allowed that year. This was true also in the year 1926, so that there remained outstanding warrants which could not be redeemed. It was held that these facts did not prevent the county from contracting obligations which could be paid only by the issuance of warrants which could not be redeemed out of the revenues of 1926, and that such obligations might later be paid. We there concluded the discussion of this question with the following statement: "But here, as in the case of *Polk County* v. *Mena Star Co.*, *supra*, expenditures have not exceeded revenues. The receipt by the collector and the redemption by the treasurer of valid warrants, which those officers could not refuse when tendered in payment of any demand due the county, made it impossible to redeem all the warrants issued in the year 1927, but those unredeemed in the year of their issuance may be redeemed, as was said in that case, out of the revenues of a subsequent year, and this is true because, in so doing, the indebtedness of the county is not increased."

If it were held that warrants issued in a particular year must first be redeemed out of the revenues of the year of their issuance before valid warrants previously issued may be redeemed, it would follow, as a practical result, that many of such previous warrants would never be redeemed.

In the instant case, expenditures have exceeded revenues, and in most of the cases which have come before us for review there has been but little, if any, excess of revenues over expenditures, and if the redemption of these previous valid warrants must be postponed until all current warrants have been redeemed, the value of the previous warrants would be destroyed, as in many cases their redemption would be impossible, and in all cases uncertain.

The redemption of warrants is a different matter which we now proceed to discuss.

Now, while, as we have said, a county must first pay its indispensable obligations before paying those which are permissible merely, yet both are paid, within the meaning of the amendment, by the county when allowances therefor are made, pursuant to which allowance warrants are issued, and these warrants, when issued, are equally valid, regardless of the purposes for which they were issued, and their priority in the matter of redemption or payment by the county treasurer thereafter depends, not upon the purpose for which they were issued, but upon the date of their issuance. The warrants thus issued are equally valid, if they are not in excess of the revenues of the year in which they were issued, and their validity is unimpaired because they cannot be redeemed by the county treasurer when the redemption of prior valid warrants has exhausted the county's supply of cash. That is the essence of the decision in the Mena Star case, *supra*.

The case of *Stanfield* v. *Kincannon, ante* p. 120, considered the order of payment of valid county warrants. It is true the warrants there issued were drawn against a fund not derived from county revenues, but from a gra-

tuity provided by the State for the benefit of the counties of the State, which fund was not, for that reason, subject to amendment No. 10. But it is true also that the statutes there construed did relate to warrants drawn against county revenues.

Section 2007, Crawford & Moses' Digest, there quoted, was passed in 1846, which was, of course, long before there was any such fund as a county turnback fund, provided by the generosity of the State, and that statute, at the time of its enactment and at all times since, has applied to county scrip or warrants, which we there held to be identical terms covering vouchers drawn against county revenues. That case disposed of the question of priority here presented, and in the construction of the act of 1846 we said: "This section applies in this case, as the treasurer is not able to meet all demands against him drawn on the county highway fund. We think it applies in all such cases and not merely to warrants issued in cancellation of scrip or warrants previously issued. Otherwise injustice might, probably would, result on account of favoritism. This view is strengthened by a reading of § 3 of said act. It provides 'that all county scrip or warrants * * * shall be received, irrespective of their number and date in payment of all taxes, duties, fines, penalties and forfeitures, accruing to said county.' The necessary inference is that, except for the purposes named in § 3, all scrip or warrants shall be redeemed in the order of their number and date, if the treasurer is not able to meet all demands. No distinction is to be made between scrip and warrants, as the terms are used interchangeably in the act. This meaning of the act was recognized by this court in *Crudup* v. *Ramsey*, 54 Ark. 168, 15 S. W. 458, in an opinion by Judge HEMINGWAY, where he said, in reference to the act of 1846, now under consideration: 'This is a part of an act which provided that warrants should be paid in the order of their number, and that no warrants should be paid until all of a prior date had been paid or provided for. * * * Its manifest purpose was to provide that warrants should be received in payment of

taxes and dues to the county, even though there were prior warrants not paid or provided for.' And the same meaning of the act was recognized in *Graham v. Parham*, 32 Ark. 677, 694, where Mr. Chief Justice ENGLISH used this language: 'County warrants shall be redeemed and paid by the county treasurer in the order of their number and date, and no warrant shall be thus paid until all of a prior date are paid, provided the county treasurer upon whom the warrants are drawn shall not be able to meet all demands upon the treasury. Acts December 17, 1846, § 2; Gantt's Dig., § 1042.' This cannot be avoided by making warrants payable in the future.''

Valid warrants must therefore be redeemed by the county treasurer in the order of their issuance when cash is available for that purpose, but, as was said by Judge HEMINGWAY in the case of *Crudup v. Ramsey*, *supra*, warrants may be received in payment of taxes and dues to the county, even though there were prior warrants not paid or provided for. The sentence following the language quoted from Judge HEMINGWAY's opinion in the Stanfield case, *supra*, reads as follows: ''It'' (the statute above referred to) ''was designed to make the date of a warrant, in so far as it was later than others, immaterial when it was offered in payment of taxes and dues—nothing more.''

The quotation from the case of *Miller v. State, to use of Woodruff County, supra*, herein appearing, is to the same effect. While, therefore, warrants may be used in payment of taxes or dues to the county regardless of their priority as to date, the warrants must, so far as their redemption by the county treasurer by payment in cash is concerned, be in the order of their priority as to number and date.

The judgment of the court below will be reversed, and all the declarations of law made at the trial from which this appeal comes, set out above, will be modified to conform to the views here expressed, and upon the remand of the cause the court will adjudge the rights of

the various parties in accordance with the principles here declared.

HART, C. J., and MEHAFFY, J., dissent in part.