PULASKI COUNTY *v.* BOARD OF TRUSTEES OF ARKANSAS TUBERCULOSIS SANATORIUM.

4-2695

Opinion delivered June 27, 1932.

*Carl E. Bailey,* for appellant.

*John W. Newman, Joseph M. Hill* and *J. F. Loughborough,* for appellee.

MEHAFFY, J. This action was begun in the county court of Pulaski County by the appellee, filing its claims for the Arkansas Tuberculosis Sanatorium against the county for the maintenance of tuberculosis patients, the claims aggregating $18,755.

The county court found that the claims were correct and unpaid, and that they should be paid by Pulaski County as soon as it has funds available for that purpose, but the county court was of the opinion that, under the provisions of amendment No. 10, it had no right to make an order allowing such claims, or to issue warrants thereon, and the court entered the following order:

"It is ordered that no order of allowance of said claim be made at this time, and that no warrants issue thereon now, and that the request of said board of trustees that allowance be made and warrants issued thereon at this time is denied, and that this order is a final judgment in that regard."

An appeal was granted to the circuit court, where it was tried on the following statement of facts:

### "STATEMENT OF FACTS

"In each of the Pulaski County fiscal years of 1930 and 1931, on orders of the county court, duly made and entered for each patient, patients were sent and admitted to the Arkansas Tuberculosis Sanatorium for maintenance in the manner required by law, whereby the county was to pay five dollars a week toward the maintenance of each of said patients, and during each of those fiscal years patients from Pulaski County were maintained at said sanatorium under such orders of the county court, but in each of the quarterly periods ending on the date hereinafter described, and the monthly period ending October 31, 1931, hereinafter described, the county failed to pay to the sanatorium the respective amounts accruing in the preceding quarterly periods and in the one monthly period shown opposite the last day thereof, as follows:

| | |
|---|---|
| June 30, 1930 | $3,275 |
| September 30, 1930 | 3,170 |
| March 31, 1931 | 4,125 |
| June 30, 1931 | 3,855 |
| September 30, 1931 | 3,260 |
| October 31, 1931 | 1,070 |

Nor did the county court enter any orders of allowance or issue any warrants on any of said claims.

"The amounts are correct, and represent the respective amounts unpaid for maintenance of Pulaski County patients at the sanatorium in the respective periods stated, at the rate of five dollars per week per patient.

"That claims in the usual form provided by law for claims against the county, describing the foregoing amounts as owing by the county to the sanatorium, were

sent to the county judge of Pulaski County within a few days after the end of each of the said periods, and were by him duly filed and kept in the records of the county court.

"In the fiscal year of 1930, the total amount appropriated by the quorum court for the maintenance of patients in the sanatorium was $13,000, and the amount paid in that fiscal year by the county on that account was $9,690, leaving $3,310 between the amount paid and the amount appropriated; and the total unpaid was $6,445.

"In the 1931 fiscal year, $10,000 was appropriated for the sanatorium, and $3,560 was paid on that account, leaving $6,440 of the appropriation that has not been paid, and a total unpaid of $12,310.

"No allowances were made or warrants issued in either of the years above the amount paid as described.

"In the fiscal year of 1930, the total county revenues, plus the valid floating indebtedness carried over from preceding years (including the amount of the indebtedness herein claimed in that year) did exceed the total valid contracts and allowances for that year; and the same is true of the 1931 fiscal year.

"The total county indebtedness incurred in the 1930 fiscal year did not exceed the revenues for that year; and the total county indebtedness incurred to October 1, 1931, was about $8,000 less than the total county revenues for the 1931 fiscal year. But an indebtedness was incurred after October 1st to November 1st of about $58,000 in excess of the revenues for that fiscal year; so that at the time all of the claims herein accruing in the fiscal year of 1930 were due, amounting to $6,445, the revenues for that year had not been exceeded. And the same is true of the claims herein that accrued in the 1931 fiscal year to September 30, 1931, amounting to $11,240, leaving the claim for the month of October, 1931, amounting to $1,070 in excess of the revenues for that year, except that the total county debts for that year, accrued to October 1, 1931, were $8,000 less than the total revenues for that year.

"Where the fiscal years of 1930 and 1931 are referred to herein, it is meant the fiscal year ending the first Monday in November in each of those years.

"Many of the patients, for whom the county's part of the maintenance is in the claim now made and unpaid, are still being maintained at the sanatorium and have not recovered from tuberculosis.

"There is attached to and made a part of this statement of facts, as Exhibit A, a statement showing the amount owing by the several counties in the State to the sanatorium for maintenance of patients sent from each, together with the number of patients from each county; the financial part of the statement being the condition on May 1, 1932, and the number of patients being those at the sanatorium on May 23, 1932. It is agreed that Dr. J. D. Riley, superintendent in charge of the sanatorium, would testify that the statement is correct, and it shall be received herein as his testimony, with the same effect as if shown in his deposition duly taken and filed herein.

"On December 7, 1924, there was outstanding general revenue fund indebtedness of Pulaski County in a substantial amount, not funded by bond issue, and the total amount of such outstanding indebtedness has not, at any time since that date, been reduced below the total amount of such valid non-bonded indebtedness of the county now outstanding, including the total amount of the claims involved herein.

"Signed this 28th day of May, 1932."

There was an exhibit which was made part of the agreed statement of facts, which showed the financial condition of the county, together with number of patients from each county. There is no necessity of copying this exhibit.

The circuit court allowed the claims in the aggregate sum of $18,755, and ordered the county court to allow it and issue warrants therefor, and judgment was entered accordingly.

Motion for new trial was filed and overruled, and the case is here on appeal.

This suit involves amendment No. 10 of the Constitution. This amendment has been before the court many times.

It will be seen from the agreed statement of facts that the only question for us to determine is whether or not the county court can allow this claim at a time when allowance of said claim would be in excess of the revenue from all sources for the current fiscal year.

The debt of the county was incurred and the claims were due at a time when they could have been paid without violating amendment No. 10. The claims were sent to the county judge, but were not acted on. Nothing was ever done by the appellees to get action on the claims at a time when they could be lawfully paid.

It is apparent that everybody connected with the case not only concedes that the claims are just, but that they should be paid if there is any way in which this can be done without violating amendment No. 10.

Appellee calls attention to a number of authorities, all of which we have carefully considered, but we think the decisions of this court construing amendment No. 10 settle this case beyond controversy.

The claims are not only just, but they are of such character that everybody would be glad to see them paid, and all regret that the situation is such that payment is impossible without a violation of the plain provisions of the Constitution. The failure to pay them will necessarily result in great hardship. That, however, does not justify the courts in violating the provisions of the Constitution.

Many instances might be named where decisions of the courts worked great hardships, and courts always regret to have to render decisions that will do this.

The law requires all demands against the estate of any deceased person to be made within one year, and all demands not exhibited, as required by law, before the end of the year are forever barred. It is wholly immaterial that the claim is just, that the estate may be very valuable, and the claimant very poor; no matter what the

equities are, if the claim is not exhibited, as required by law, within one year, it cannot be paid.

The owner of a promissory note must bring his action before the claim is barred by the statute of limitations. If the creditor fails to do this, his claim is barred and cannot be collected.

Under the provisions of amendment No. 10, the county court cannot make a contract, and cannot make any allowance for any purpose whatsoever in excess of the revenues from all sources for that year.

The court is not only prohibited by this amendment from making an allowance, but the county judge cannot sign or issue any script or warrant in excess of the revenue, and, if a warrant was issued on this claim, the officer or officers of the county who authorized, signed or issued such warrant would be guilty of a misdemeanor, and subject to fine and removal from office.

The holders of the claims involved in this suit might have compelled action by the Pulaski County Court and collected their money. It was their duty to do this.

It was said in the last case construing amendment No. 10:

"The holder of a valid warrant may, by an appropriate action, compel the redemption of his warrants, to the exclusion of an invalid warrant, and he may, if necessary, enjoin the redemption of an invalid warrant. The invalid warrants cannot be received by any collecting officer of the county, and the officer who does receive one does so at his peril and is not entitled to take credit for it in any settlement of his account, because the warrant is void. It is issued without authority, and the action of a collecting officer in receiving it cannot give it validity. Counties (and cities and towns also) must pay as they go, and can go only so far as they can pay, and they are without power to make or authorize any contract or make any allowance or issue any warrant for any purpose whatsoever in excess of the revenues, from all sources, for the fiscal year in which said contract was entered into, or allowance made, or warrant issued.

None of these statements announce any new interpretation of the amendment, but all have been made one or more times in the numerous cases interpreting the amendment, in a more or less futile attempt to coerce the fiscal officers of the counties, cities and towns of the State to obey the plain mandate of the Constitution." *Stanfield* v. *Friddle*, 185 Ark. 873, 50 S. W. (2d) 237.

In *Nelson* v. *Walker*, 170 Ark. 170, 279 S. W. 11, we said:

"If we should hold otherwise, the obvious purpose of the amendment would be defeated. It would only be necessary to first make the allowances for the expenses covering those things with which a county might dispense to the extent of all the revenue, or so much thereof as was necessary to pay them, and then make allowances to cover the claims where the compensation is definitely fixed by law. It must be quite obvious that, if a county court can make allowances to cover claims which may be paid for by a county, but which are not essential to the operation of the county's affairs, and, after doing so, may then make other allowances on the theory that indispensable services have not been paid for, the provision of the amendment that the county's indebtedness shall not be increased would have no binding effect on the county judge who wished to evade it."

This amendment has been construed frequently by this court, and most of the cases are cited and the principles discussed in *Luter* v. *Pulaski County Hospital Asso.*, 182 Ark. 1099, 34 S. W. (2d) 770; *McGregor* v. *Miller*, 173 Ark. 459, 293 S. W. 30; *Dixie Culvert Mfg. Co.* v. *Perry County*, 174 Ark. 107, 294 S. W. 381; *Lybrand* v. *Wafford*, 174 Ark. 298, 296 S. W. 729; *Polk County* v. *Mena Star Co.*, 175 Ark. 76, 298 S. W. 1002; *Lake* v. *Tatum*, 175 Ark. 90, 1 S. W. (2d) 554; *Miller* v. *State use Woodruff County*, 176 Ark. 889, 1 S. W. (2d) 998; *Chestnutt* v. *Gates*, 177 Ark. 894, 9 S. W. (2d) 37; *Carter* v. *Cain*, 179 Ark. 79, 14 S. W. (2d) 250.

There are other cases construing amendment No. 10, but we do not deem it necessary to review all these deci-

sions here. None of the cases in which amendment No. 10 has been construed are in conflict with the principles herein announced.

While it is to be regretted that the situation is such that the appellee cannot collect its just claims, yet the plain provisions of the Constitution compel the conclusions herein reached.

The judgment of the circuit court is reversed, and the cause remanded with directions to enter a judgment disallowing the claims.

McHANEY, J., dissents.