HARRINGTON *v.* GILLUM.

4-3857

Opinion delivered May 13, 1935.

*Jack Machen,* for appellant.

*Alvin D. Stevens,* for appellee.

BUTLER, J. This is a petition for mandamus by the county assessor of Columbia County to compel the treasurer of said county to pay certain warrants issued to the petitioner in part payment of his official salary. The

988

case was tried upon an agreed statement of facts which are as follows:

"1. That during the whole of the year 1932 the plaintiff was the duly elected, qualified and acting tax assessor of Columbia County, Arkansas, and that the defendant was, during the year 1932, the duly elected, qualified and acting treasurer of Columbia County, Arkansas, and now is the duly elected, qualified and acting treasurer of Columbia County, Arkansas.

"2. That on October 3, 1932, the plaintiff received in payment of his salary and expenses for the month of September, 1932, county warrant No. 829 for $197.50. That, when said warrant was issued, the revenue for the year 1932 had not been exhausted; that on December 5, 1932, the plaintiff received county warrant No. 1237 for $205 in payment of his salary and expenses for the month of November, 1932, this warrant having been issued after the revenue from all sources for the year 1932 had been exhausted; that on December 30, 1932, the plaintiff received county warrant No. 1278 for $197.50 in payment of his December salary and expenses. That said warrant was issued after the revenue from all sources for 1932 had been exhausted.

"3. That demand had been made to the county treasurer, the defendant in this cause, for the payment of said warrant, which has been refused.

"4. That there are now sufficient funds available in the general revenue fund of said county for the payment of said warrants, said funds having been received by the defendant during the year 1934.

"5. That the total revenue collected for the general revenue fund of Columbia County, Arkansas, for the year 1932 was $36,673.23. That the total amount of warrants issued in the year 1932 for all purposes, both statutory and contractual obligations of said county for the year 1932, was $41,707.69. That there was $33,-346.22 of statutory claims filed against the county, said claims being statutory and indispensable in the necessary operation of county government. That warrants for $8,361.47 were issued in the payment of contractual claims."

The trial court granted the prayer of the writ as to warrant No. 829 for $197.50 issued on October 3, 1932, but denied so much of the prayer as related to warrant 1237 for $205 issued December 5, 1932, and warrant No. 1278 for $197.50 issued December 30, 1932. From the judgment denying the writ for the last two mentioned warrants, this appeal is prosecuted.

From the agreed statement of facts, it will be observed that when the warrant issued on October 3, 1932, was received, the county revenues for that year had not been exhausted, but, when the last two mentioned warrants were issued, the revenues had been exhausted. It is insisted, however, that because of the nature of the appellant's claim—to-wit, that the warrants in question were issued for statutory and indispensable expenses necessary for the county government—Amendment No. 10 to the Constitution has no application. That amendment has been quoted in full in a number of our decisions. In brief it provides that no county court, or other agency of a county, shall make or authorize any allowance for any purpose whatsoever in excess of the revenue from all sources for the fiscal year in which said contract or allowance is made, and that no warrant shall be issued in excess of such revenue.

Appellant recognizes the effect of our decisions in *Nelson v. Walker*, 170 Ark. 170, 279 S. W. 11, and *Stanfield v. Friddle*, 185 Ark. 873, 50 S. W. (2d) 237, wherein it was held that the prohibition of the amendment, *supra*, applied to all claims, either indispensable or permissive. Appellant points out the injustice which has arisen and which may in the future arise from a strict and literal construction of the amendment, and we are asked to review and, in effect, to overrule the cases mentioned.

In the recent case of *Skinner & Kennedy Stationery Co. v. Crawford County*, *ante* p. 883, we had occasion to deal with the identical question presented by this appeal. In that case we reviewed and distinguished the decisions bearing on the subject and said: "It appears therefore to be the settled doctrine that, without regard to the character of the expenses incurred, whenever the

expenditures have equaled the revenues of a county in any given year, an allowance for any sum in excess thereof, whether it be for one of the necessary expenses of the county or for a permissive expense only, is void, and any warrant issued upon said allowance is likewise void.''

It is argued that the burden of debt under which counties labored and which occasioned the adoption of Amendment No. 10, *supra,* occurred, not because of the necessary expenses of county government, but because of extravagant expenditure of county revenue by county courts in the allowance and payment of claims arising .from contracts for expenses which were not indispensable and which have been classed as ''permissive expenses.'' It is insisted that the framers of the amendment had no other purpose in view than to prevent the expenditure of county revenues for this character of expenses. We, however, can only judge the purpose of the amendment by the language used, which prohibits the allowance or payment of any claim ''for any purpose whatsoever,'' where such payment would be in excess of the revenue for the year in which the allowance was made. There can be but one meaning for the language quoted, *i. e.,* that whatever the expense may be and for whatever purpose incurred, it falls within the prohibition of the amendment if in excess of the county revenue. No other purpose is indicated by any expression contained in the amendment. The prohibition is clear and explicit and cannot, and ought not to, be refined away by judicial construction. Any other interpretation of the amendment would not only do violence to its express language, but would serve to defeat the very purpose of its adoption. As pointed out in *Nelson* v. *Walker, supra:* ''It would only be necessary to first make the allowances for the expenses covering those things with which a county might dispense to the extent of all the revenue, or so much thereof as was necessary to pay them, and then make allowances to cover the claims where the compensation is definitely fixed by law. It must be quite obvious that, if a county court can make allowances to cover claims which may be paid for by a county, but

which are not essential to the operation of the county's affairs, and, after doing so, may then make other allowances on the theory that indispensable services have not been paid for, the provision of the amendment that the county's indebtedness shall not be increased would have no binding effect on the county judge who wished to evade it."

It follows that the trial court was correct in denying the writ as to warrants issued when the county revenue had been exhausted, and its judgment is therefore affirmed.

JOHNSON, C. J., (dissenting). I cannot agree with the majority opinion. It holds in fact and effect that there is no difference between necessary and indispensable expenditure for county purposes and those heretofore treated and considered as non-essential, when measured by Amendment No. 10. The sixth subdivision of § 1982 of Crawford & Moses' Digest, which provides:

"The court shall then proceed to the making of appropriations for the expenses of the county or district for the current year, including as such expense any items for blank printed forms used, by any of the several county officers, to-wit: sheriff, clerk, coroner, collector, assessor or treasurer of said county or district, and also for fuel, lights and stationery used by such officers in their respective offices, and for official purposes; and said appropriations shall be made in the following order:

1. To defray the lawful expenses of the several courts of record of the county or district and the lawful expenses of criminal proceedings in magistrate's courts, stating the expenses of each of said courts separately.

2. To defray the expenses of keeping persons accused or convicted of crime in the county jail.

3. To defray the expenses of making the assessments and tax books and collecting taxes on real and personal property.

4. To defray the lawful expense of public records of the county or district.

5. To defray the expense of keeping paupers of the county or district.

6. To defray the expense of building and repairing public roads and bridges and repairing and taking care of public property.

7. To defray such other expenses of county government as are allowed by the laws of this State.

8. After the appropriations shall have been made, the court shall then levy the county, municipal and school taxes for the current year. Acts May 31, 1909, p. 902,''
—is destroyed by the majority opinion, as is the holding of this court in the early case of *Worthen* v. *Roots,* 34 Ark. 356, where it was specifically decided: ''The nature and reason of this distinction, and, indeed, the full scope of the operation of the Constitution itself, will become apparent from a consideration of the various purposes for which the tax is to be levied. Reverting to them, it will be seen that the first four are of an indispensable nature, essential to the support of the Government. They are for services that must be performed, or the business of the counties must stop. The last three are not supposed to be imposed by necessity, but are matters of contract.''

Moreover, in *Polk County* v. *Mena Star Co.,* 175 Ark. 76, 298 S. W. 1002, we expressly held that there were two classes of claims against the general revenue of counties; the first of which was created by statute (concededly appellant's claim falls within this class) and about the allowance of which the county court was substantially without discretion in allowing, and the second, was those claims which arose out of contract and over which the county court has discretionary power. The court there said: ''It will therefore be seen that this court many years ago determined and held that there were two classes of obligations dealt with in this section of the statutes; first, those that are imposed on the counties by law and about which the county court is substantially without any discretion; and, second, those that relate to matters of contract regarding the internal affairs of the county, or internal improvement thereof, over which the county court has discretionary power—items 1 to 4, inclusive, being in the first class, and items 5, 6 and 7 being in the second class.''

The last case referred to was decided by this court after Amendment No. 10 was adopted, and it should be the law of this case.

The majority cite in support of the opinion, *Skinner & Kennedy, etc.* v. *Crawford County, ante* p. 883, as decisive of the conditions here urged. This is true if the language quoted could be considered otherwise than as mere *dictum*. The language quoted however is not necessary to the opinion because that case turned upon the proposition that the total revenues of the county for the fiscal year were not exhausted at the end of the year, and no showing was made that any expenditures allowed for the fiscal year fell within the contractual class. The Crawford County case was rightly decided on the facts there presented, and the language quoted as contained therein should be treated here as mere *dictum* and not controlling.

The majority also cite and quote from *Nelson* v. *Walker*, 170 Ark. 170, 279 S. W. 11, but this case may be finally disposed of by saying that *Polk County* v. *Mena Star Co.* was decided subsequent thereto, and should be treated and considered as amendatory thereof. *Stanfield* v. *Friddle*, 185 Ark. 883, 50 S. W. (2d) 237, is likewise cited as supporting the majority opinion. This opinion cites with approval *Polk County* v. *Mena Star Company* and *Worthen* v. *Roots, supra.* Therefore I take it that neither was overruled thereby. Moreover, for aught that appears in the opinions, the asserted claims against the county there under consideration arose out of contract and therefore fell within the second classification, and in this view the opinion does not impair the Mena Star Company case. The Mena Star Company case, *supra,* is sound in reason and logic. Its doctrine should be followed instead of being not only impaired, but destroyed, as is done by the majority, and this without discussing it or giving to it a decent burial.

It harmonizes with the statutes of the State and fits into the Constitution and amendments thereto. It harmonizes Amendment No. 10 with the Constitution of 1874, whereas the majority opinion is at war with innumerable other provisions of the organic law. My

construction of Amendment No. 10 is that expenditures for county general purposes for any one year shall not exceed the revenues for that year, but such expenditures are divided into two classes, namely; First, indispensable; Second, those which may be dispensed with. Claims which fall within the first class must be paid to the exclusion of all claims of the second class until the total revenue for the year is exhausted. If, at the end of the fiscal year and after paying all claims which fall within the first class, any revenues, remain unexpended, they may and should be applied on claims arising under the second classification. This interpretation of Amendment No. 10 is fortified by all previous opinions of this court as I view them, and is consonant with all other constitutional provisions, as I shall hereafter undertake to show.

The majority opinion creates an anomalous situation in this State. County judges are enthroned, set upon a pedestal—independent and above—the legislative branch and all other county and district officials created by the Constitution of 1874. The county judge may now tie the hands of the sheriffs and jailers—he may starve the county clerks, tax assessors and treasurers, he may force the jailer to free and set at liberty all the criminals incarcerated in the county jails, and he may, in effect, say to the circuit courts: "Thou shall not sit," and enforce his mandate by strangulation. Until now this court has construed the Constitution and the amendments thereto as a whole, not giving undue and unwarranted emphasis to any provision thereof over other provisions. *Hawkins* v. *Filkins*, 24 Ark. 286; *Vahlberg* v. *Keaton*, 51 Ark. 534, 11 S. W. 878; *State* v. *Hodges*, 107 Ark. 272, 154 S. W. 506; *State* v. *Buzzard*, 4 Ark. 18; *Grant* v. *Hardage*, 106 Ark. 506, 153 S. W. 826.

Amendment No. 10 as construed by the majority is now the supreme law of this State, and all other provisions of the Constitution of 1874 and amendments thereto are nullified and destroyed by judicial interpretation. For instance, article 7 of the Constitution of 1874 creates circuit courts and § 12 thereof provides that the judges thereof shall hold their terms at such times as

may be prescribed by law. Section 2206 assigns the respective counties of the State to designated circuits, and by following provisions it is made mandatory upon the judge of such circuit that two terms of the court shall be held in each county in his district yearly. To accomplish this purpose, a grand and petit jury must be convened, and such jurors must be paid by the county for services rendered. Under the doctrine of the majority opinion, a county judge may now expend the entire revenue of his county during the first month of the year for disinfectants and other similar non-necessities and thereby make it impossible for the circuit courts to sit or act during the balance of the fiscal year. If the majority's construction and interpretation of Amendment No. 10 harmonizes with the constitutional provisions heretofore quoted, then the word "absurd" may be made to mean logical.

Neither the framers of Amendment No. 10 nor the people who voted for it had any such absurdity in mind. Moreover, by § 46 of art. 7 of the Constitution of 1874, the office of tax assessor for the respective counties is expressly created. By law such assessor is dependent upon allowances against the county for his salary. By the process of strangulation as heretofore pointed out, the county judge may extravagantly exhaust the county revenues during the first months of the fiscal year and thereby force the regularly elected and qualified assessor to resign else to serve without pay. Many other absurdities might be pointed out, but the ones discussed will suffice to show the unfortunate conditions created by the majority opinion. The conditions pointed out are not merely imaginary; they are real. The county assessor, who is the appellant here, is actually required to work without pay for two months because the county judge saw fit to spend money which belonged to appellant as a matter of right and of law for some unnecessary and dispensable county purpose. Appellant's claims should of right and of law be allowed and paid, and the loss should fall upon those who contracted with the county judge and rendered, in any event, only dispensable services or things to the county.

I respectfully register my dissent.