**GILLESPIE et al. v. YELL COUNTY, ARK., et al.**

No. 11996.

Circuit Court of Appeals, Eighth Circuit.

Jan. 5, 1942.

Wallace Townsend, of Little Rock, Ark., and Justus H. Fugate and James G. Martin, both of Wichita, Kan. (Martin, Harris & Fugate, of Wichita, Kan., on the brief), for appellants.

Henry Donham, of Little Rock, Ark., and Lewis M. Robinson and F. D. Majors, both of Dardanelle, Ark. (Sam Rorex and Donham, Fulk & Mehaffy, all of Little Rock, Ark., on the brief), for appellees.

Before GARDNER, SANBORN, and WOODROUGH, Circuit Judges.

WOODROUGH, Circuit Judge.

### Statement.

This is the second appeal in this case. The appellants are the owners of all of a series of bonds issued by Yell County, Arkansas, in 1928, to fund indebtedness of the County which was outstanding in 1925. They brought this action originally in equity against the County and its officers and Sovereign Camp Woodmen of the World as defendants to have it decreed that the bonds held by appellants were on a parity with and entitled to share proportionately in the security pledged for a certain prior series of funding bonds issued by the County in 1925 which had been acquired and was held by the Sovereign Camp Woodmen of the World. The two series of bonds purported to be issued under the general authority of Constitutional Amendment of Arkansas No. 10, adopted by vote, October 7, 1924, or December 7, 1924, and in conformity with the procedure implementing the Amendment prescribed by the Arkansas Act of March 23, 1925, Act 210, and were made payable by their terms out of a general property tax levy of not to exceed three mills. The object of the suit was to require the proceeds of the three mill tax to be apportioned between the holders of the different bond issues and applied as apportioned to satisfy the respective bond obligations. This court determined on the first appeal (87 F.2d 944) that the funding bonds issued by the County in 1925 acquired and held by the Sovereign Camp Woodmen of the World had been issued in conformity with the powers granted by Constitutional Amendment of Arkansas No. 10 and in accordance with the terms of Act 210 of 1925; that they were valid bonds secured by the special tax, and that the Sovereign Camp was entitled to have the proceeds of the special tax applied to payment thereof.

As to the other series of bonds which the County attempted to issue in 1928 and which are now held by the appellants, the decision of this court was that they did not create a valid charge against the bond tax levy and were invalid, and that the appellants had taken them charged with constructive notice of defects. The following sections of the syllabus epitomize the reasons for the conclusion:

"Holder of county refunding bonds issued pursuant to constitutional and statutory provisions authorizing issuance of bonds and payment thereof by tax levy not to exceed three mills *held* entitled to first lien upon proceeds of such a tax levy sufficient to pay principal and interest of its bonds as against claims of holders of bonds subsequently issued (Acts Ark. 1925, pp. 608 to 612; Const.Ark.Amend. 10, adopted 1924). * * *

"Where county refunding bonds had been issued on faith of constitutional and statutory provisions authorizing their issuance and their payment by special tax levy not to exceed 3 mills and where tax of 1¾ mills had been levied, subsequent action of quorum court in levying 1¼-mill tax for bonds subsequently issued after county court's redetermination of county's indebtedness *held* void as impairing obligation of contract and depriving original bondholders of their security without due process (Acts Ark. 1925, pp. 608 to 612; Const.Ark.Amend. 10, adopted 1924; Const.U.S. art. 1, § 10, and Amend. 14). * * *

"Where recitals of county bonds disclosed that they were issued pursuant to judgments of county court, and judgments were entered upon court's records and recited facts which rendered bonds invalid, and transcript of record of bonds delivered to attorneys for purchasers of bonds included such judgments, purchasers were bound to take notice of want of power of county officers to issue bonds (Crawford & Moses' Dig.Ark. § 7822)."

This court observed nothing in the record then before the court to indicate that the money paid and received by the County for the 1928 series of bonds had not been delivered, received and applied to the use of the County in good faith and no issue upon that matter was before the court. We accordingly noted at the foot of the opinion directing decree that nothing in the decree should foreclose any rights the appellant bondholders may have as creditors of the County.

After the decision of the appeal in this court, these appellants amended their complaint in the District Court, striking out "all parts thereof that affect the adjudicated rights of the former defendant, Sovereign Camp Woodmen of the World, the prayer for allocation to [appellants'] bonds of a part of the three mill tax levied to pay funding bonds" and re-alleging all of the proceedings and circumstances of the issuance by the County in 1928 of the second series of debt funding bonds which were acquired by appellants. They alleged that Yell County received the sum of $71,587.50 for which it issued the bonds; that the parties advancing the money did so in good faith, expecting to receive and believing that they had received valid obligations of the County and that the money was received by the County and was placed in the hands of its treasurer in the bond account of Yell County and was used by the County for its benefit as shown by a document referred to as Exhibit "H"; that the appellants were the successors in interest of the parties who paid the $71,587.50 to the County, having acquired the same [interest] for value in due course without notice; that on December 7, 1924, the County had outstanding indebtedness amounting to $71,587.50 which the County thought it had a right to fund and for which it issued the funding bonds dated May 1, 1928. These appellants also alleged that they were subrogated to the rights of the holders of the said indebtedness existing on October 7, 1924, and December 7, 1924. They admitted partial payment by the County on the principal of the money advanced by appellants in the sum of $4,000 and that the County had paid interest thereon to November 1, 1933, and they alleged that the County had never denied the indebtedness nor the validity of the bonds until it filed its answer in this cause on September 25, 1935. It was further alleged that the County was justly indebted to appellants in the remaining sum of $67,-456.35 for money had and received and judgment was prayed for that amount with interest and costs.

The County made no objection to the amendment of the pleading and answered admitting that in the year 1928 it received the sum of $71,587.50 for which it executed and delivered its bonds dated May 1, 1928, and that it had disposed of the money for the County's benefit as shown by the document Exhibit "H". It denied that the parties advancing said money did so in good faith with the expectation and belief that

they had received valid obligations of the County. It denied that it had outstanding indebtedness on October 7 and December 7, 1924, as alleged, and denied that the County thought it had the right to fund such an indebtedness. Further answering it alleged "that in obtaining and receiving the sum of $71,587.50 the officials of Yell County acted wholly without power and authority to bind the County for repayment of said indebtedness for the reason that the amount of said debt thus incurred was grossly in excess of the revenues for said County for the year 1928, and under the provisions of the Constitution and Statutes of the State of Arkansas said debt is wholly null and void and defendant County is not liable for the repayment of same." By amendment to the answer the County pleaded that the cause of action was barred by the three year statute of limitations (Section 8928 of Pope's Digest of the Statutes of Arkansas), in that "the original complaint herein [filed April 6, 1935] was not filed until more than three years after the money was had and received by Yell County." Dismissal with costs was prayed.

### District Court Trial and Decision.

No oral testimony was heard on the trial to the court of the issues presented by these pleadings, and pursuant to stipulation of the parties the Agreed Statement of Facts included in the Transcript of Record on the former appeal in this court was considered in evidence. It was also stipulated that the appellants are the owners of all the outstanding bonds of the 1928 issue and interest coupons due May 1, 1934, and subsequent thereto; that they purchased the same prior to the filing of this suit and by virtue thereof are successors in interest to the parties who originally paid the sum of $71,-587.50 to defendant Yell County; that said payment was made in good faith, said bondholders expecting to receive and believing that they had received valid obligations of the County; and that by virtue of said ownership of said bonds plaintiffs [appellants] are subrogated to the rights of the parties who originally paid said sum of money to Yell County to the extent of the amount represented by said bonds.

It was apparent from the record that the County had fully recognized its obligation on appellants' bonds and admitted its liability thereon by paying or providing for the payment of the interest until shortly prior to the institution of this suit and the court found as a fact that the County "first denied the validity of the bonds and the County's liability thereon, insofar as these [appellants] are affected, by its answer filed in this suit on September 24, 1935." But the court concluded as a matter of law that the appellants' cause of action accrued on June 6, 1928 (being the date the $71,587.50 was paid in to the County), and that the cause of action was barred under the three year statute of limitations. Sec. 8928 of Pope's Digest of the Statutes of Arkansas.

In addition to the finding and conclusion that the suit was barred by limitations, the court also made findings of fact upon which it concluded as a matter of law that the contract under which the County received the $71,587.50 of bond proceeds was in violation of the provisions of Constitutional Amendment No. 10 and was void and therefore the bondholders were not entitled to recover on the cause of action. The case was dismissed and this appeal followed.

### Opinion.

We consider first the merits of the cause of action and turn to the constitutional provisions referred to in the trial court's conclusion "that the contract under which the County received said sum of $71,587.50 was in direct violation of Amendment No. 10 to the Constitution of the State of Arkansas. The provision read:

"The fiscal affairs of counties, cities and incorporated towns shall be conducted on a sound financial basis, and no county court or levying board or agent of any county shall make or authorize any contract or make any allowance for any purpose whatsoever in excess of the revenue from all sources for the fiscal year in which said contract or allowance is made; nor shall any county judge, county clerk or other county officer, sign or issue any scrip, warrant or make any allowance in excess of the revenue from all sources for the current fiscal year; * * *

"Provided, however, to secure funds to pay indebtedness outstanding at the time of the adoption of this amendment, counties, cities, and incorporated towns may issue interest-bearing certificates of indebtedness or bonds with interest coupons for the payment of which a county or city tax in addition to that now authorized, not exceeding three mills, may be levied for the time as provided by law until such indebtedness is paid.

"Where the annual report of any city or county in the State of Arkansas shows that

scrip, warrants or other certificates of indebtedness had been issued in excess of the total revenue for that year, the officer or officers of the county or city or incorporated town who authorized, signed or issued such scrip, warrants or other certificates of indebtedness shall be deemed guilty of a misdemeanor and upon conviction thereof, shall be fined in any sum not less than five hundred dollars nor more than ten thousand dollars, and shall be removed from office."

■ The amendment has been considered by the Supreme Court of Arkansas from many angles in many cases, and wherever the counties have been sued on "contracts authorized or allowances made for any purpose in excess of the revenue from all sources for the fiscal year in which said contract or allowance is made" recovery against the counties on such contracts or allowances entered into or made after the adoption of the Amendment No. 10 has been denied. The Arkansas Supreme Court's position is exemplified in Nelson v. Walker, 170 Ark. 170, 279 S.W. 11, where allowance of claims was sought to meet extreme needs of the county for coal to heat the court house and for fees of court officers and for a county judge's monthly salary. The holding was that the allowances if made would result in making the total allowances exceed the county's total revenue for the fiscal year and injunction against making them was sustained. It is no longer open to argument in Arkansas that counties can not since the amendment make any contract for any purpose in excess of the revenue of the county from all sources for the fiscal year in which the contract is made. Arkansas Power & Light Co. v. Fidelity & Cas. Co., 197 Ark. 187, 121 S.W.2d 890; Miller County v. Blocker, 192 Ark. 101, 90 S.W.2d 218; Harrington v. Gillum, 190 Ark. 987, 82 S.W.2d 533; Pulaski County v. Board of Trustees, 186 Ark. 61, 52 S.W.2d 972; Dixie Culvert Mfg. Co. v. Perry County, 178 Ark. 454, 12 S.W.2d 10; Dixie Culvert Mfg. Co. v. Perry County, 174 Ark. 107, 294 S.W. 381; Kirk v. High, 169 Ark. 152, 273 S.W. 389, 41 A.L.R. 782.

The stipulated facts recognized by the District Court as to the revenues and expenditures for Yell County in 1928 are: "The amount of revenue received by Yell County from all sources during the year 1928, including the proceeds of the sale of the $83,000.00 bond issue of May 1, 1928, was $135,029.81, and the amount of ex-

penditures made by the County in the year 1928, including the expenditure of the proceeds of the sale of said $83,000.00 bond issue of May 1, 1928, was $118,048.69." On this basis the expenditures were $16,981.12 less than the revenues.

If the proceeds of the $83,000 bond issue be eliminated from the above computation of revenue as not constituting "revenues" of the County within the meaning of the amendment, the total excess of the County's expenditures for the year 1928 over the "revenues" is shown to be $66,018.88. The actual proceeds of the bond issue were as stated $71,587.50. The conclusion arrived at by the trial court assumes that the bond proceeds were not "revenue" and in effect determines that the County's expenditures were in excess of the revenues and that such excess expenditure caused the $71,587.50 payment of the bondholders to come "in direct violation of Amendment No. 10" and made "absolutely void" any implied contract of the County to restore any part of their money to the bondholders.

But we are not persuaded that the 1924 constitutional prohibition against county contracts or allowances in excess of the fiscal year's revenue has any relation to the cause of action of these appellants in its present form. In their action as amended the gist of the claim of appellants is that the County had become and was lawfully and justly indebted to diverse creditors in the amount of $71,587.50 prior to the adoption of Amendment No. 10 in 1924 and that it ought to be held that the mistakes made in issuing the invalid bonds to fund said debts and in taking and using the appellants' $71,587.50 did not operate to extinguish the County's just and lawful debt in that amount, but only worked a change in the persons to whom the County ought to pay the same amount. See Miller v. State, 176 Ark. 889, 1 S.W.2d 998; Boone County v. Skinner-Kennedy Stationery Co., 191 Ark. 329, 86 S.W.2d 18.

The allegation of appellants' pleading as amended after the decision of this court was as stated above, that at the time of the adoption of Amendment No. 10 "the county had outstanding indebtedness (consisting of two items) amounting to $71,587.50" "and these were the debts the county thought it had the right to fund and for which the county issued" the bonds appellants bought. The county in its answer to these allegations denied "that such debts

existed or that the county thought it had the right to fund the same."

The trial court did not make any fact finding upon the fact issue thus tendered, but referred in its fact findings as stated to the "Agreed Statement of Facts as it appears on pages 107 to 116 in the Circuit Court of Appeals for the Eighth Circuit." Examination of that document makes it perfectly clear that the lawful and just indebtedness of the County outstanding at the effective date of the Amendment No. 10 in 1924 over and above the debt in the amount of $139,464.61, funded by the issuance of the valid bonds acquired by the Woodmen of the World, was $71,587.50 as alleged by appellants, and also that this was the same debt which "the county thought it had the right to refund and for which the county issued" the bonds which appellants bought.

We find nothing in the wording of Amendment No. 10 to the effect that lawful debts of counties incurred and outstanding at the time of the adoption of the Amendment should be wiped out or discharged without consideration. Nor do we find in any of the decisions that any such intent has been ascribed to the Amendment, or even contended for. On the contrary, the Amendment relates to and authorizes the payment of such debts existing at the time of its adoption by means of a bond issue and a tax levy to pay the bonds. It contains nothing relative to conditions like those presented here which result when attempts to exercise the debt funding powers granted by the Amendment have turned out to be ineffectual because of defects in the bond issue proceedings carried on under the implementing Act. But if the Amendment should be construed to deny such bond purchasers recovery, both on account of their bonds and for the money received from them by the County to apply on the outstanding debts for which the bonds were issued, the obvious result would be to extinguish the County's lawful debts without any consideration from the taxpayers. We think the Amendment contains neither direct nor implied justification for such a result.

The invalidity of appellants' bonds and our refusal to permit their payment out of the bond tax levy resulted because the County had pledged the taxes authorized by the Amendment to the holders of the first bond series and could not, without impairing the obligation of contract, appor-

tion the 1¼ mill percentage of the same levy to secure or pay appellants. The agreed fact in this case is that the County court of the County made a mistake in computing the amount of County indebtedness outstanding at the time of Amendment No. 10 and erroneously failed to include among the debts it intended and was constitutionally empowered to fund by bond issue certain lawful debts aggregating $71,587.50. The County's mistaken attempt to substitute bonded debt and to apportion 1¼ mills of the bond tax levy to such bonds resulted simply in substituting new claimants against the County for its old creditors. The invalid bond issue merely failed to substitute the bond tax levy for the County's general obligation. It did not satisfy the indebtedness.

The situation where a county has obtained money to pay off its lawful debts by means of bonds that turn out to be invalid for failure to comply with the procedure prescribed for their issuance is old and well known in the courts. Persons who have innocently paid their money for such bonds are universally held to be entitled to recover judgment therefor in an action for money had and received against the County which has received the money and applied it to the County's use. City of Louisiana v. Wood, 102 U.S. 294, 26 L.Ed. 153; Town of Gilman v. Fernald, 8 Cir., 141 F. 941; State v. Citrus County, 116 Fla. 676, 693, 695, 157 So. 4, 97 A.L.R. 431; Oconto Co. v. Town of Townsend, 210 Wis. 85, 244 N.W. 761, 246 N.W. 410; Board v. McClellan, 164 La. 808, 114 So. 694; Nebraska State Bank Liq. Ass'n v. Village of Burton, 134 Neb. 623, 279 N.W. 319; 7 A.L.R. 353, note.

We discover no good reason why the appellant bondholders in this case should be deprived of this well established remedy. They are entirely innocent, either actually or constructively, of violating any of the provisions of Amendment No. 10. The bond record on which their bonds rested correctly informed them that the bonds were not being issued to create any new County debt, in excess of the revenues for the fiscal year or otherwise, in violation of the Amendment No. 10. The recitals were, and the truth was, that the debts in respect to which the bonds were issued were valid debts which already existed, and the bonds recited on their face:

"It is hereby warranted, covenanted, declared and represented that this bond is is-

sued for the purpose of securing funds to pay the indebtedness of said County existing at the time of the ratification of said Amendment No. 11 to the Constitution of said State, and that such indebtedness, which this bond is issued to fund, is valid indebtedness existing at the time of the ratification of said Amendment;"

"It is further covenanted that if, for any reason, this bond should be held invalid, the holder of it shall be subrogated to all of the rights and equities of the holders of the indebtedness which this bond is issued to fund."

An adjudication that the holders of the invalid bonds should be subrogated to and be put in the shoes of the creditors of the County who had held $71,587.50 of its valid indebtedness does not conflict in any way with the provisions of Amendment No. 10. If the bondholders had taken assignments from the old creditors, they would certainly not have offended against the Amendment. Nor does offense result from accomplishing the effect of assignment through application of the doctrine of subrogation.

A point is made in this connection, however, which must be considered.

Although the bonds were as shown in the orders for their issuance and as recited on their face, issued "for the purpose of procuring funds to pay and discharge the indebtedness of Yell County existing at the time of the ratification of [the Amendment]", and although the proceeds of the bond issue were duly deposited in the "Bond Account" of the County when they were received, it appears from the record (particularly the recitals in the orders made by the County Court of the County) that the Sheriff, Collector and Treasurer of the County erroneously redeemed and paid the original warrants, which represented the indebtedness, out of the County funds and took credit therefor in their respective settlements, "leaving the County with no funds on which to operate or pay current expenses." It is not shown exactly when this erroneous action was taken by the designated officers. The bonds bore date May 1, 1928, and the money was not actually received for them until June 6, 1928. It is compatible with the record that the mistake of the administrative officers consisted merely in treating the anticipated bond proceeds as though they were on hand before they were actually and physically received. However that may be, it resulted solely from their erroneous action in prematurely redeeming the warrants that the identical money of the bondholders was not directly applied to "pay and discharge the indebtedness existing" as contemplated by the County and by the bondholders throughout the proceedings by which the bonds were issued, sold and paid for to the County. The District Court found the facts as to how the bond account had been applied and identified all the items of legitimate and proper County expense but made no reference to the erroneous actions of the administrative officers.

■ But to determine whether the appellants were, as they alleged, "subrogated to the rights of the holders of the County indebtedness existing October 7, 1924 and December 7, 1924," the court must look to the real substance of the bond transaction as a whole. Regardless of the order in which the Sheriff, Collector and Treasurer may have taken in and paid out particular items of County receipts and disbursements and of any mistakes made as to the order they followed, there can be no doubt that the actual and intended result of the bond transaction was that to the extent of the money paid in by the bondholders old debts were discharged and claims corresponding exactly in amount are asserted by the bondholders. The fact that the County's expenditures for the year were $16,981.12 less than the County's total receipts is demonstrative that there was no intentional exceeding the revenues. The excessive expenditure found by the District Court was obviously attributable solely to the understanding that the bond proceeds offset the old outstanding indebtedness.

■ The controlling and clearly established facts are that the County actually received the money for which appellants demanded judgment; that the transaction was completely devoid of any fraud or collusion or intention to evade or violate the law; that the funds received from appellants were offset by a corresponding amount of lawful existing debt and that they were applied by the County to legitimate County purposes. There was no excess of expenditures over "revenues" which could be attributed to the appellants, who were in no sense parties to the disposition made of their money after they had delivered it to the County to apply on old debts. The bond transaction cannot fairly be treated as though the bond purchasers had contributed their money to the County to enable the County to make expenditures for new ob-

ligations in excess of the normal County revenues. To do so distorts the picture and leads to injustice. The real purposes and intent of the parties and the contract they in good faith intended must be deemed to establish the character of the whole transaction rather than the mistakes in details committed by the Sheriff, Collector and Treasurer. We conclude the trial court was in error in ascribing to appellants and to their bond transactions any violation of the provisions of the Amendment and in denying them judgment on that account.

### The Statute of Limitations.

The trial court concluded that the concededly applicable three year statute of limitations began to run against the cause of action in this case at the time the bond proceeds were turned in to the County "Bond Account" on June 6, 1928. The appellants insist that the conduct of the County in fully recognizing the validity of the bonds and paying the interest thereon tolled the running of the statute so that the date on which the County first denied obligation to appellants should be taken as the starting time for the running of the statute. The suit was brought April 6, 1935, within two years after default in interest payments, and the first denial of the debt, insofar as these appellants are concerned, was in the County's answer of September 24, 1935. If, therefore, the contention of appellants is sound, the cause of action was not barred.

Our determination on the point is in favor of the appellants.

Although an action for money had and received to the use of defendant ordinarily accrues when the money is received, there is a well settled exception in cases where money has been paid in to counties and municipalities for bonds which are long recognized as valid and paid as to accruing interest but are subsequently found to be invalid for such defects in the bond issue proceedings as were shown in this case. This court has firmly declared the law to that effect. Town of Gilman v. Fernald, 8 Cir., 141 F. 941; Board of Commissioners v. Irvine, 8 Cir., 126 F. 689; Geer v. School District, 8 Cir., 111 F. 682. This has been stated to be the general rule, 94 A.L.R. 608 note; see Parkwood Co. v. Board, D.C., 33 F.Supp. 810; also Special Tax School Dist. v. Hillman et al., 131 Fla. 725, 738, 179 So. 805; see and cf. Nebraska State Bank Liquidation Association v. Village of Burton, 134 Neb. 623, 279 N.W. 319, and we are cited to no statutes or decisions of Arkansas to the contrary. The decision of the Supreme Court of Arkansas in Forrest City v. Bank, 116 Ark. 377, 172 S.W. 1148, appears to accord in principle with the holdings of this court. There the city was sued on interest bearing renewal notes which were issued by it in violation of Section 1 of Article 16 of the Constitution of Arkansas. The city pleaded the violation and that the statute of limitations had run on the original debt for which the original interest bearing notes had been given and therefore no recovery could be had against the city. The court directed its inquiry to the inception of the debt and determined that it had been lawfully incurred. The holding was that the recognition of the indebtedness by the city and the payment thereon tolled the statute of limitations and recovery for the amount of the debt without interest was sustained.

### Directions.

We conclude that the judgment of the District Court should be reversed with direction to enter judgment in favor of appellants and against the County in the sum of $67,436.65, said judgment to include no interest. Article 16, Section 1, Constitution of Arkansas; Sections 9399, 9400, Pope's Digest, Vol. 2, p. 2372; Missouri & Arkansas Lbr. & Min. Co. v. Greenwood, 249 U.S. 170, 39 S.Ct. 202, 63 L.Ed. 538.

Appellants have pointed out that if they are awarded judgment against the County difficult problems as to payment ensue and we are urged to prescribe methods for realizing on the judgment. Especially it is contended that the power remained in the County to issue refunding bonds at least up to $19,000, being the amount of an indebtedness incurred by the County between the dates October 7, 1924, and December 7, 1924, and that we should enforce exercise of such power. But we think our duty on this appeal extends no further than to determine the issue presented by the appellants' claim of indebtedness and the County's denial thereof and to direct the entry of the judgment. We cannot anticipate what action the County may take or refuse to take in view of the judicial determination of the issue presented to us.

Reversed with directions indicated.