POLK COUNTY *v.* MENA STAR COMPANY.

Opinion delivered October 17, 1927.

1. CONSTITUTIONAL LAW—EFFECT OF AMENDMENT.—A constitutional amendment being the last expression of the popular will, constitutional provisions which are necessarily repugnant must yield, and all others remain in force.

2. COUNTIES—ALLOWANCES IN EXCESS OF REVENUE.—Amendment 11 to the Constitution, prohibiting counties from making contracts or allowances in any year in excess of revenue from all sources for that year, *held* not intended to obstruct the necessary and orderly administration of county affairs imposed by other provisions of the Constitution and by the laws of the State, such as a holding of elections, printing ballots, feeding of prisoners, the holding courts of record, and the fees of officers.

3. COUNTIES—MATTERS WITHIN THE DISCRETION OF THE COUNTY COURT.—Under Crawford & Moses' Dig., § 1982, providing for appropriations to defray county expenses, items including expenses of courts and criminal proceedings, of keeping accused persons in jail, of collecting taxes, and the public records, are not within the discretion of the county court, but items to defray the expenses of keeping paupers, of building and repairing public roads and bridges, and taking care of public property and other expenses of the county government are within the discretion of the county courts.

4. COUNTIES—CLAIMS ALLOWABLE.—Under Const. Amendment 11, prohibiting the county court or levying board of the county from making contracts or allowances for any purpose whatsoever in excess of the revenue from all sources for that year, the levying board may appropriate the total revenue and the county court may make contracts and allow claims for all the revenue of any fiscal year, regardless of other indebtedness existing at the time of the adoption of the amendment, and regardless of other indebtedness incurred subsequent thereto, provided same was not in excess of the revenue for the year in which it was incurred.

5. COUNTIES—ALLOWANCES PAYABLE FROM SUBSEQUENT REVENUE.—Where contracts and allowances made by the county court for a particular year did not absorb all the revenue for that year, but the county was unable to pay out of the revenue for such year all allowances incurred during such year, because of indebtedness brought over from a prior year, claims for printing expense incurred in an election and for feeding of prisoners in jail were valid, and not in violation of Amendment 11, prohibiting the allowances in any year exceeding the revenue from all sources for that year, and such expenses may be paid out of the revenue of a subsequent year.

6. COUNTIES—DUTY OF LEVYING COURTS.—The quorum or levying courts should strictly follow the provisions of Crawford & Moses' Dig., § 1982, specifying the order of appropriation, but cannot exceed the amount of revenue for the fiscal year.

7. COUNTIES—CONTRACTS IN EXCESS OF REVENUE.—Contracts made or warrants issued by a county in any year in excess of the revenue for that year are void, under Amendment 11.

Appeal from Polk Circuit Court; *B. E. Isbell,* Judge; affirmed.

*Mark P. Olney,* for appellant.

*Minor Pipkin,* for appellee.

*H. W. Applegate,* Attorney General, *amicus curiae.*

McHANEY, J. This appeal involves another construction of Amendment No. 11 to the Constitution of this State. Appellee, Mena Star Company, is a printing establishment in the city of Mena, Polk County, Arkansas, and in the year 1926, by order of the county board of election commissioners of said county, printed election supplies for the general State election in October and the congressional election in November, consisting of ballots, poll-books, tally sheets, etc., the bill for which amounted to $114.50. The appellee, G. F. Bickle, is the sheriff of said county and, as such officer, had charge of the prisoners charged with crime in said county who were confined in the county jail, and incurred charges against the county in the lawful sum of $19 for feeding them. Both appellees presented their claims to the county court, which were disallowed, and they thereupon, within apt time, appealed to the circuit court. The cause was submitted to the circuit court upon these claims and an agreed statement of facts, which is as follows:

"It is agreed that, at the end of the fiscal year 1924, Polk County was indebted in a large amount upon outstanding county warrants, which were legal obligations of said county, and that bonds have never been issued to liquidate said indebtedness.

"That, for the year 1925, the revenues accruing to said county for said year exceeded the allowance by the county court of said county of claims accruing during said year, but that, during said year, a large amount of

the warrants which were outstanding at the close of the fiscal year 1924 were presented to and paid by the county treasurer of said county out of the revenues of said year 1925, and that, by reason of said payments, the revenues for said year were not sufficient to pay all warrants issued upon allowances for said year 1925.

"That, for the year 1926, the revenues accruing to said county for said year amounted to the total sum of $33,054.72, and that allowances by the county court for said year of claims against said county amounted to the sum of $19,717.53, and that additional obligations of said county were contracted during said year to the amount of $8,453.48, but that such claims as were presented therefor were not allowed, for the reason that, at the time of their presentation, the funds of the county had been exhausted by reason of the fact that there had previously been presented to and paid by the county treasurer of said county the sum of $14,399.61 of warrants of the 1925 issue; that the total revenues of said county for the year 1926 exceeded the total amount of the legal obligations of said county which accrued during said year in the sum of $4,883.74, and that the claims of the claimants herein were among the obligations of said county which accrued during said year.

"That the claims of the claimants herein were not presented to the court for allowance until April 15, 1927, and that, at the time of their presentation, there were, and still are, sufficient revenues of said county of the year 1927 to pay said claims as well as all other legal obligations which were incurred by said county during the year 1926, in addition to the claims that have been presented for allowance during the year 1927, the said obligations for the year 1926 unpaid amounting to the total sum of $8,453.48 as aforesaid.

"That the claim of the claimant, the Mena Star Company, is for printing the ballots, poll-books and other election supplies ordered from claimant by the election commissioners of said county and used by them in the conduct of the general elections held in said county during said year 1926, and were used for said purpose; that

the amount of said claim is correct, and that said claim has not been paid, and that the amount thereof is $114.50.

"That the claim of the claimant, G. F. Bickle, is for services rendered by him during the year 1926 as sheriff of said county for keeping and feeding prisoners confined in the jail of said county, which, under the law, he was required to keep and feed, and that said claim is correct in amount, and has not been paid, and that the amount thereof is $19.

"That said claims were duly and in due form of law presented to the county court of said county for allowance and were by the court disallowed, from which orders of disallowance said claimants have duly prosecuted their appeals to the circuit court of said county."

Thereupon the circuit court rendered judgment allowing both claims, made an order directing the county clerk to draw his warrant on the treasurer in payment thereof, and directed the certification of its judgment to the county court, to be spread upon its records. An appeal was prayed and granted, so the case is here for our determination.

As heretofore stated, it becomes necessary again to construe Amendment No. 11, the pertinent parts of which are as follows:

"The fiscal affairs of counties, cities and incorporated towns shall be conducted on a sound financial basis, and no county court or levying board or agent of any county shall make or authorize any contract or make any allowance for any purpose whatsoever in excess of the revenue from all sources for the fiscal year in which said contract or allowance is made; nor shall any county judge, county clerk, or any other county officer, sign or issue any scrip, warrant or make any allowance in excess of the revenue from all sources for the current fiscal year; nor shall any city council, board of aldermen, board of public affairs, or commissioners of any city of the first or second class, or any incorporated town, enter into any contract or make any allowance for any purpose whatsoever, or authorize the issuance of any contract or war-

rants, scrip or other evidence of indebtedness, in excess
of the revenue for such city or town for the current fiscal
year; nor shall any mayor, city clerk, or recorder, or any
other officer or officers, however designated, of any city
of the first or second class, or incorporated town, sign
or issue any scrip, warrant or other certificate of indebt-
edness, in excess of the revenue from all sources for the
current fiscal year. ' Provided, however, to secure funds
to pay indebtedness outstanding at the time of the *adop-
tion* of this amendment, counties, cities and incorporated
towns may issue interest-bearing certificates of indebted-
ness or bonds with interest coupons for the payment of
which a county or city tax, in addition to that now author-
ized, not exceeding three mills, may be levied for the time
as provided by law until such indebtedness is paid.''

This court has already had this amendment under
consideration in the same or different phases in the fol-
lowing cases: *Brickhouse* v. *Hill,* 167 Ark. 513, 268 S.
W. 865, where the amendment was held adopted; *Kirk* v.
*High,* 169 Ark. 152, 273 S. W. 289; *Matheny* v. *Independ-
ence Co.,* 169 Ark. 925, 277 S. W. 22; *Babb* v.
*El Dorado,* 170 Ark. 10, 278 S. W. 649; *Jewett* v. *Norris,*
170 Ark. 71, 278 S. W. 652; *Nelson* v. *Walker,* 170 Ark.
172, 279 S. W. 11; *Airheart* v. *Winfree,* 170 Ark. 1126,
282 S. W. 963; *Martin* v. *State ex rel. Saline Co.,* 171 Ark.
576, 286 S. W. 873; *McGregor* v. *Miller,* 173 Ark. 459,
293 S. W. 30; *Independence Co.* v. *Lester,* 173 Ark. 796,
293 S. W. 743; *Dixie Culvert Mfg. Co.* v. *Perry Co.,* 174
Ark. 107, 294 S. W. 381; *Ivy* v. *Edwards,* 174 Ark. 1167,
298 S. W. 1006. It will therefore be readily seen that this
court has been called upon to answer different questions
arising under, because of, or out of this amendment a
goodly number of times since it was declared adopted in
*Brickhouse* v. *Hill, supra,* decided February 16, 1925.

Before proceeding to a discussion of the issues
involved in this case, it may be well to bear in mind a few
of the fundamental rules of construction relating to con-
stitutional amendments, in connection with the original
Constitution, and also the language of § 2 of this Amend-

ment, which specifically provides that it shall repeal only such provisions of the Constitution as are in conflict with the provisions of this Amendment. In *Kirk* v. *High, supra,* this court said:

"The rule by which amendments to the Constitution are to be construed was stated in the case of *Hodges* v. *Dawdy,* 104 Ark. 583, 149 S. W. 656, where it was said: 'The amendment being the last expression of the popular will in shaping the organic law of the State, all provisions of the Constitution which are necessarily repugnant thereto must, of course, yield, and all others remain in force. It is simply fitted into the existing Constitution, the same as any other amendment, displacing only such provisions as are found to be inconsistent with it. Like any other new enactment, it is a "fresh drop added to the yielding mass of the prior law, to be mingled by interpretation with it." *State* v. *Sewell,* 45 Ark. 387. In the construction of its terms, and in the determination of its scope and effect, the courts should follow settled rules of interpretation.' "

Therefore this amendment simply took its place in the Constitution of this State as already written, as a part thereof, neither more nor less than any other section, clause or part thereof. It was simply a "fresh drop added to the yielding mass of the prior law, to be mingled by interpretation with it". (*State* v. *Sewell,* 45 Ark. 387) and was devised by its framers and adopted by the people with two purposes in view: (1) to prevent them from incurring any indebtedness in any fiscal year in excess of the revenue from all sources for such year; and, (2) to provide a way to pay indebtedness existing at the time of the adoption of the Amendment. So, as was said again in *Kirk* v. *High, supra,* "No interpretation of the Amendment under consideration in this case should be allowed which would conflict with any other provision of the Constitution, unless it is absolutely necessary in order to give effect to the Amendment. On the other hand, such construction should be given as will, if possible, leave all the other provisions of the Constitution

unimpaired and in full force." *State* v. *Donaghey,* 106 Ark. 56, 152 S. W. 746.

The court in the same case quoted from *People* v. *Potter,* 47 N. Y. 375, as follows:

"The intent of the lawmaker is to be sought for. When it is discovered, it is to prevail over the literal meaning of the words of any part of the law. And this intent is to be discovered, not alone by considering the words of any part, but by ascertaining the general purpose of the whole, and by considering the evil which existed calling for the new enactment, and the remedy which is sought to be applied. And when the intent of the whole is discovered, no part is to be so construed as that the general purpose shall be thwarted, but all is to be made to conform to reason and good discretion. And the same rules apply to the construction of a Constitution as to that of a statute law."

Again, in the same case, the following was cited and approved from *State* v. *Scott,* 9 Ark. 270:

"In determining the intentions of the framers of the Amendment we must keep in view the Constitution as it stood at the time the Amendment was made, the evil to be remedied by the Amendment, and the Amendment proposed by which the evil is to be remedied. No interpretation should be allowed which would conflict with any other provision of the Constitution, or which is not absolutely necessary in order to give effect to the proposed Amendment. On the contrary, such construction should be given as will, if possible, leave all the other provisions in the Constitution unimpaired and in full force."

Bearing these well established and universal rules in mind, we are of the opinion that it was not the purpose of the framers of this Amendment or the intention of the people in adopting it to obstruct the necessary and orderly administration of the affairs of the counties, such as are imposed upon them by the other provisions of the Constitution and laws of this State. The holding of elections, printing ballots, poll-books, tally sheets and other election supplies; the feeding of prisoners confined in the county jail; the holding of courts of record

and fees of justices of the peace; the salaries and fees of county officers, including the prosecuting attorneys; the making of assessments and taxbooks, and collecting taxes, are all necessary county expenses imposed by law, over which the county court has no control or discretion, except possibly the amount to be allowed for the service rendered, as all compensation is either fixed by law or is provided for.

The sixth subdivision of § 1982, C. & M. Digest, reads as follows:

"The court shall then proceed to the making of appropriations for the expenses of the county or district for the current year, including as such expenses any items for blank printed forms used by any of the several county officers, to-wit: Sheriff, clerk, coroner, collector, assessor or treasurer of said county or district, and also for fuel, lights and stationery used by such officers in their respective offices, and for official purposes; and said appropriations shall be made in the following order:

"(1). To defray the lawful expenses of the several courts of record of the county or district and the lawful expenses of criminal proceedings in magistrate's courts, stating the expenses of each of said courts separately. (2). To defray the expenses of keeping persons accused or convicted of crime in the county jail. (3). To defray the expenses of making the assessments and taxbooks and collecting taxes on real and personal property. (4). To defray the lawful expense of public records of the county or district. (5). To defray the expense of keeping paupers of the county or district. (6). To defray the expense of building and repairing public roads and bridges and repairing and taking care of public property. (7). To defray such other expenses of county government as are allowed by the laws of this State."

In the case of *Worthen* v. *Roots,* 34 Ark. 356, construing the foregoing section with reference to items 1 to 7, this court said:

"The nature and reason of this distinction, and, indeed, the full scope of the operation of the Constitu-

tion itself, will become apparent from a consideration of the various purposes for which the tax is to be levied. Reverting to them, it will be seen that the first four are of an indispensable nature, essential to the support of the Government. They are for services that *must* be performed, or the business of the counties must stop. The last three are not supposed to be imposed by necessity, but are matters of contract.''

It will therefore be seen that this court, many years ago, determined and held that there were two classes of obligations dealt with in this section of the statutes; first, those that are imposed on the counties by law and about which the county court is substantially without any discretion; and, second, those that relate to matters of contract regarding the internal affairs of the county, or internal improvement thereof, over which the county court has discretionary power—items 1 to 4 inclusive being in the first class, and items 5, 6 and 7 being in the second class.

Bearing this section of the statutes in mind, let us analyze that part of § 1 of Amendment No. 11 now under consideration. The first clause thereof reads: ''The fiscal affairs of counties, cities and incorporated towns shall be conducted on a sound financial basis, and no county court or levying board or agent of any county shall make or authorize any contract or make any allowance for any purpose whatsoever in excess of the revenue from all sources for the fiscal year in which said contract or allowance is made; nor shall any county judge, county clerk, or any other county officer, sign or issue any scrip, warrant, or make any allowance in excess of the revenue from all sources for the current fiscal year.'' The remainder of that paragraph has reference to cities and towns. It will be seen that the prohibition therein is against the making of contracts or allowances in any year in excess of the revenue from all sources for that year. In other words, the levying court may appropriate the total revenue and the county court may make contracts and allow claims for all the revenue of any fiscal year, regardless of indebtedness existing

at the time of the adoption of this Amendment, December 7, 1924, and regardless of other indebtedness incurred subsequent to December 7, 1924, provided same was not in excess of the revenue for the year in which it was incurred. According to the agreed statement of facts, contracts and allowances made by the county court for the year 1925 did not absorb all the revenue for that year, but that the payment of warrants outstanding at the time of the adoption of this Amendment made it impossible to redeem all claims contracted and allowed during such year. The same thing is true for the year 1926. This was not in violation of the Constitution, for the reason that the contracts and allowances for those fiscal years did not exceed the revenues for such years, but in fact were much less, thereby enabling the county to reduce its indebtedness without exercising the bond-issuing provisions of this amendment. The revenue for Polk County for 1926 was $33,054.72. The county court allowed claims for said year in the sum of $19,717.53 and contracted other obligations amounting to $8,453.48, or a total of $28,171.01, or nearly $5,000 less than the revenue, but, by reason of a large indebtedness brought over from 1924, incurred prior to December 7, a large part of which had been paid in 1925 and '26, the county was unable to pay out of the revenue of 1926 all the allowances and contract obligations incurred in that year. Under this state of facts, we hold that they may be paid out of revenues for 1927, or subsequent revenues, and that they are valid claims against the county in so far as they may be affected by Amendment No. 11.

Quorum or levying courts should follow the provisions of the sixth subdivision of § 1982 of C. & M. Digest strictly in making appropriations. They should first make ample provision for those necessary expenses imposed on the counties by law, including outstanding warrants payable in that year, as, for instance, an installment due for construction of a courthouse; and, after having done this, they are at liberty to make appropriations of part or the whole of the remainder of the revenue for the purposes provided by items 5, 6 and 7,

but they cannot exceed the amount of the revenue for the fiscal year. If contracts are made or warrants issued in any year in excess of the revenue for that year, they are void. *Dixie Culvert Mfg. Co.* v. *Perry Co., supra.*

It follows from the foregoing that the judgment of the circuit court is correct, and must be affirmed. It is so ordered.