MANHATTAN RUBBER MANUFACTURING DIVISION OF RAYBESTOS MANHATTAN, INC., v. BIRD, MAYOR.

4-7528                                    185 S. W. 2d 268

Opinion delivered February 12, 1945.

*A. B. Shafer,* for appellant.

*Elton A. Rieves, Jr.,* for appellee.

SMITH, J.    Appellant recovered a judgment on November 3, 1936, against the city of Earle, for $500, the purchase price of certain fire equipment sold the city March 1, 1935, and seeks by mandamus to enforce its payment.

In denying this relief, the trial court held: "The record shows that in 1935 the revenue of the city exceeded the disbursements by $944.25.  It is further shown that the city received revenues in the sum of $5,519.67 in 1936.  The court is not advised as to why this account or the judgment rendered thereon was not paid out of the revenue for that year in which the goods were purchased or the revenues for the year in which the judgment was rendered.  It is shown that practically all of the revenue for 1935 was expended prior to December 15, 1936, (only $11.94 was carried over into 1937).  The officers cannot pay without violating the provisions of the constitution.  Mandamus never lies to compel one to do an act which is forbidden or not authorized by law.  For this reason petition will be denied."

It appears that prior to and since 1935 the city has levied only three mills of the permissible five-mill tax for general revenue purposes, but now proposes to levy the additional two mills permitted by the Constitution, to repair its sewer system.  The record shows that the entire proceeds of the five-mill tax for one year will be required, and will not be sufficient, to pay for these repairs, and the administrative expenses of the city government, and the city does not now have in its treasury the funds to pay this judgment.  For these reasons, the court below denied the prayer for mandamus, holding that to grant that relief would be a violation of Amendment No. 10 to the Constitution, which prohibits the cities, counties and towns of the state from expending any sum "for any purposes whatsoever in excess of the revenue from all sources for the fiscal year in which said contract or allowance is made."

The court found, however, and the fact does not appear to be questioned, that in the year 1935, in which the

city purchased the fire equipment, its revenues were $944.25 in excess of its disbursements. The contract for the purchase of the equipment was not therefore violative of Amendment No. 10, and was a valid contract when made, and the judgment rendered upon the failure to pay for the equipment will continue to be a valid obligation of the city until it is paid, unless barred in a manner hereinafter discussed. The test of the validity of the contract is whether its performance and payment required an expenditure of revenues in excess of those for the year in which the contract was made, and as it did not, the judgment based thereon is a valid obligation.

We attach no importance to the fact that the city did not, for 1935, or for subsequent years, levy the five-mill tax which the Constitution permitted. The proceeds of the taxes, which it did levy, whether five mills or less, together with revenues from other sources, constitute the limit of obligations which the city may incur. It may or may not be true that if the city had in 1935, and in subsequent years, levied a five-mill tax, it would now have a surplus in its treasury sufficient to pay this judgment, but that fact is unimportant, as the city's right to contract and incur obligations is limited by the amount which it did collect, and not what might have been collected.

Now the judgment which it is sought here to compel the city to pay is not of itself necessarily conclusive of the city's duty and power to pay it. Ordinarily judgments are conclusive of all questions which were or might have been litigated, but to be so, they must be rendered in matters over which the court had jurisdiction. We have expressly and frequently held that there is a lack of authority on the part of a city—and counties and towns as well—to make a valid contract which involves expenditures exceeding the revenues of the year in which the contract was made.

In the case of *McGreger* v. *Miller*, 173 Ark. 459, 293 S. W. 30, we said: "This claim was void because it was an obligation incurred in the year 1925 in excess of the revenues of that year. We think we have made it plain

that a county cannot incur any obligation in any year which exceeds the revenues of that year, and, if this is done, such obligations are void, and cannot be paid out of the revenues of a succeeding year. If this could be done, obligations could thus be carried from one year to another. The revenues of one year would be applied to the discharge of obligations of a previous year, and one of the purposes of the amendment was to prevent this from being done.''

In the McGreger case, *supra,* we also said: ''But another and more effective answer is that warrants issued, as well as obligations incurred, which are in excess of the revenues, are void, and the action of the court in issuing a warrant, or in making an allowance upon which a warrant might later be issued, is *coram non judice,* and said warrants and allowances are void,'' which is to say that courts cannot properly order a warrant paid which was based upon a contract requiring an expenditure in excess of the revenues for the year in which the contract was made.

We adhere to this ruling, but is it applicable and controlling here? We have here neither allegation nor proof that the city was without power to make a contract for the purchase of the fire equipment when it did so. On the contrary, we have the affirmative and unquestioned finding of the trial court that the city's revenues in 1935 exceeded its expenditures or disbursements by $944.25. Nor do we have here either allegations or proof that the city acted collusively in suffering a judgment to be rendered by default. So far as the record before us shows, the city had no defense to the suit and the judgment was properly rendered. There was and is a valid judgment and the obligation to pay it continues and will remain until the right to enforce it is barred.

The insistence is that by its inaction and lack of diligence, the creditor has lost the right to now demand payment, inasmuch as the city does not now have the funds with which to pay, and the cases of *Pulaski County* v. *Board of Trustees of Ark. Tuberculosis Sanatorium,*

186 Ark. 61, 52 S. W. 2d 972; *Miller County* v. *Beasley,* 203 Ark. 370, 156 S. W. 2d 791; *Eureka Fire Hose Mfg. Co.* v. *City of Ozark,* 203 Ark. 709, 158 S. W. 2d 679, are cited to sustain this contention.

In the first of these cases, the county became indebted to the trustees of the sanatorium for the medical care of residents of the county in the years 1930 and 1931, at which time the county's revenues exceeded its expenditures, including these medical services. But the claims against the county therefor were not presented until several years later, at which time expenditures were in excess of revenues. In the Miller County case, *supra,* a landowner permitted the county to condemn and appropriate his land for highway purposes, without requiring payment of his damages before his land was entered. The claim for these damages was not presented until the following year, at which time the county's revenues had been depleted, and the demand could not be paid without exceeding the revenues of the county for that year. In the third case, that of *Eureka Fire Hose Co.* v. *City of Ozark, supra,* the city purchased certain fire equipment in 1931, and the purchase could have been paid for without exceeding the revenues of that year, but not until 1939 was final demand made for payment, at which time it could not have been paid without exceeding the revenues of that year. In the meantime, the city had expended the surplus carried forward from 1931.

We said in the case last cited: "In the instant case it was the duty of appellant to have pressed the payment of its claim when the city had funds out of which it might have been paid and not to wait until the funds out of which it might have been paid had been exhausted." There the claimant waited three years before filing suit. Here suit was filed in the year following the sale of the equipment. A suit for mandamus could not have been brought until the validity and amount of the claim had been adjudged, as mandamus is never employed to establish a right, but only to enforce an existing right.

We do not think the affirmative showing was made that the claim could not have been paid in 1936, the year

the judgment was rendered, without increasing the city's indebtedness. The report of the city's finances filed by the mayor and city treasurer, with the clerk of the county court, March 6, 1936, shows a balance on hand of $8.39, and concludes with the statement that there was a balance in the city treasury at the close of the year of $5.21, and that there was an excess of revenues over disbursements of $944.25. This balance does not appear to have been carried forward in subsequent reports to the county clerk, and it does not appear what became of it. The city may have been in debt, and this balance may have been applied to the payment thereof. But the fact, if it is fact, that the city did not have the cash in 1936 to pay the judgment does not of itself render the judgment void.

A county, city or town may continue to function although it does not have the cash to pay each year the obligations contracted in that year. The inhibition of the Constitution is that expenditures shall not exceed revenues, which is to say that a city, county or town in debt may continue to function although it does so on a credit, and not on a cash basis, but it may not increase its indebtedness.

In the case of *Crawford County* v. *Maxey*, 196 Ark. 361, 118 S. W. 2d 257, revenues were available to pay part, but not all of certain claims, but no part of the claims was paid. It was held that so much of the claims as might have been paid out of the revenues collected for the year in which the obligation was incurred could be paid out of the revenues of a subsequent year, for the reason that the county's indebtedness was not thereby increased.

Here, the 1935 revenues exceeded obligations, and the claims for the fire equipment was a valid obligation until it is paid, unless through inaction the claimant's right to payment becomes barred.

In our opinion the rule announced in the Pulaski County, the Miller County and the Eureka Fire Hose Co. cases, *supra*, does not apply. There can be no more formal demand of payment than the institution of a suit to enforce payment, as was done in the instant case.

174

Now the city's ability to pay the claim, if it wishes to do so, is apparent. It has been levying only a three-mill tax, when it has the power to levy a five-mill tax for general revenue purposes.

It is true that the city made the showing that this additional two mills will be used to repair its sewer system, a use of general revenues which a city might make if such revenues are available, but the city is not restricted to its general revenues for this purpose. See Act 132, Acts of 1933, p. 405, appearing as § 9977 *et seq.*, Pope's Digest.

The city should not use its revenues for the repair of the sewers, when to do so would defeat its ability to pay the administrative expenses of the city government, whether statutory or contractual. The claim here involved is contractual and not statutory, and should be paid as such, subordinated only to statutory claims against the city which should first be paid, *Miller County* v. *Beasley, supra,* p. 375.

The judgment of the court below will therefore be reversed and the case will be remanded, with directions to award mandamus as prayed, requiring the city to pay this claim in its order, that is prior to other contractual obligations subsequently incurred. Inasmuch as the city has not levied the full amount of tax authorized for general purposes, it will be required, if found necessary, to levy an additional millage, not, however, exceeding five mills in any event.