JEFFERY, COUNTY JUDGE v. TREVATHAN.

4-8870                                      220 S. W. 2d 412

Opinion delivered May 16, 1949.

312

*Millard G. Hardin, M. F. Highsmith* and *W. M. Thompson,* for appellant.

*C. M. Erwin,* for appellee.

*Barber, Henry & Thurman, Amici Curiae.*

ED. F. McFADDIN, Justice. The Publicity Act (Initiative Act No. 2 of 1914) is involved on this appeal, as also are questions of *res judicata* and Mandamus.

Appellee Trevathan (plaintiff below) owns and publishes a newspaper in Independence county, known as "Batesville News Review." Appellant Jeffery is the County Judge of Independence county, and the other

appellants are all of the other members of the Quorum Court.[1] They were the defendants in the Circuit Court. The plaintiff filed a complaint praying for a writ of mandamus to compel the defendants as the Quorum Court to make certain appropriations. The defendants stood on their demurrer, which was overruled. Thereupon the writ of mandamus was issued as prayed; and the appellants have appealed.

In 1947, the County Clerk of Independence county— acting under the provisions of §§ 4 and 5 of the Initiative Act No. 2 of 1914 (§§ 8792-93, Pope's Digest) caused to be published in the plaintiff's newspaper a summary of the proceedings of the County Board of Equalization and also a list of the claims allowed by the County Court. The total cost for the publication of these items in 1947 amounted to $316.80; and we will refer to this amount as ''the 1947 claim.'' The plaintiff filed his claim with the County Court for the $316.80, and the claim was disallowed. The plaintiff appealed to the Circuit Court, which by its judgment of April 12, 1947, affirmed the disallowance made by the County Court, saying:

''This claim seems to be just and legal, but there was no appropriation whatever made by the Quorum Court of this County for the purpose of taking care of this claim or claims of this nature. And under the rulings of the (Supreme) Court in that particular case,[2] which seems to be identical with the facts here, this court will have to hold, as a matter of law, that the claim should not be allowed. There will be a judgment here for the defendant Independence County.''

The plaintiff appeared before the Quorum Court at its regular meeting in November, 1948, and urged that an appropriation be made, not only for the 1947 claim, but also for the payment of claims in 1948 arising because the County Clerk continued in 1948 to have matters published, as required by §§ 8792-93, Pope's Digest. The Quorum Court refused to make any such appro-

[1] Art. VII, § 30 of the Arkansas Constitution.

[2] Referring to Nevada County v. News Printing Co., 139 Ark. 502, 206 S. W. 899.

priation for 1947 or 1948, although ample funds were available for such purposes, and unused for any other purpose.

In 1948, the Clerk of Independence County—continuing to act under § 5 of Initiated Act No. 2 of 1914—caused to be published in the plaintiff's newspaper a list of all the claims allowed by the County Court. The total cost for the publication of these amounted to $180; and we will refer to this amount as "the 1948 claim." Instead of filing the 1948 claim with the County Court, the plaintiff on December 2, 1948, filed the present action in the Circuit Court, alleging all the facts as heretofore recited, and further alleging:

". . . that on the 1st day of November, 1948, there was in the treasury of Independence County, Arkansas, to the credit of the county general fund the sum of nineteen thousand fifteen and 55/100 dollars ($19,015.55) and that there is now, a surplus in the treasury of Independence County, Arkansas, over and above all outstanding warrants and allowed claims an amount in excess of ten thousand dollars.

.   .   .   .   .   .   .   .   .   .

"That at the time of the publication of all of said notices, . . . and at this time, there are ample funds in the treasury of Independence County, Arkansas, to pay all of said claims . . . and this plaintiff has no adequate remedy at law unless the Quorum Court of Independence County, Arkansas, the defendants herein, appropriate funds for the payment of said claim; . . .

.   .   .   .   .   .   .   .   .   .

"That it was the duty of the defendants acting as members of the Quorum Court of Independence County, Arkansas, to appropriate sufficient monies from the treasury of Independence County, Arkansas, to pay the claim . . . for the year 1948 and that they had no discretion or right to deny or refuse to make such appropriation; . . . . ".

The prayer of the complaint was for a writ of mandamus, requiring the Quorum Court to appropriate

money from the ample funds of the county to pay, not only the 1947 claim previously disallowed, but also the 1948 claim which the plaintiff held for presentation to the County Court as soon as an appropriation might be made.

As aforesaid, the defendants filed their demurrer, and after it was overruled they elected to stand on it and suffered final judgment to be rendered, from which comes this appeal. A demurrer admits, for the purpose of a ruling thereon, all the facts that are well pleaded. Keith v. Pratt, 5 Ark. 661; Gardner v. Hill, 197 Ark. 550, 123 S. W. 2d 1071; and see cases collected in West's Arkansas Digest, "Pleading, § 214.

We have summarized the salient facts stated in the complaint. Able briefs have been presented in this Court. We copy below the five points as listed by appellants on which they rely for reversal:

"First, because mandamus will not lie to control the actions of a ministerial body. That the body can be forced to act, but having once acted, its discretion cannot be controlled, if it has discretion.

"Second, because section 2527 of Pope's Digest provides the order in which the quorum courts shall make appropriations, and this Court has held that appropriations made under the first four paragraphs of this section are mandatory, but those made under paragraphs 5, 6 and 7 of said section are directory and contractual, and over which the quorum court has discretionary powers.

"Third, because claims against a county for publications under Initiated Act No. 2 of 1914 are contractual claims, they cannot be paid until an appropriation has been made by the quorum court, such appropriation must be made under authority of paragraph 7 of section 2527 of Pope's Digest, and since it is a contractual claim, the quorum court and the county court have discretion as to whether or not appropriations are made to pay such claims.

"Fourth, because Initiated Act No. 2 of 1914 is unconstitutional.

"Fifth, because $316, of appellee's claim, is *res judicata.*"

We proceed to dispose of the issues in the following topic headings.

I. *The 1947 Claim as Res Judicata.* This is the appellants' fifth point, as above listed. We will first consider it, before coming to the real and important issues. The plaintiff is entitled to no relief for the 1947 claim. The Circuit Court disallowed this claim on April 12, 1948, and that judgment has become final, because more than six months have passed, and no appeal has been lodged in this Court. See § 2746, Pope's Digest, and Webster v. Horton, 188 Ark. 610, 67 S. W. 2d 200; and cases collected in West's Arkansas Digest, "Judgment", § 564. So, in the eyes of the law, there is now no subsisting 1947 claim, and therefore the plaintiff has no standing in court to seek a mandamus to have an appropriation made to pay a claim that is barred.

It is true that the Circuit Court in its order of April 12, 1948, disallowing the 1947 claim expressed the thought that the judgment of disallowance would not be considered as *res judicata* if the Quorum Court subsequently made an appropriation. But the equitable intentions of the Circuit Court cannot alter the law that a solemn judgment of the Court disallowing the claim has become final. The main benefit the plaintiff gained by the 1947 claim was the indication as to what to expect if he presented his 1948 claim to the County Court before an appropriation had been made. Also, the plaintiff's experience regarding his 1947 claim clearly indicates his belief in the necessity of a mandamus proceeding to have an appropriation made before he presents his 1948 claim. So we consider the 1947 claim of $316.80 as passing out of this litigation, and we proceed to consider the mandamus case as applying to the 1948 claim which has never been disallowed.

II. *The Publicity Act of 1914.* In their fourth point appellants claim that this Act is unconstitutional. We

will first discuss the Act and the cases involving it, and then consider the appellants' argument.

At the general election in 1914 the People adopted Initiative Act No. 2 referred to heretofore and herein as the "Publicity Act." It consists of 14 sections and is found in its entirety on page 1511, *et seq.*, of the Printed Acts of 1915. The major portions thereof are to be found in §§ 8788-8801, inclusive, Pope's Digest, and in §§ 15-201 to 15-212, inclusive, of Ark. Stats. of 1947. By Act 239 of 1933 § 12 of the Publicity Act was amended in particulars not here important, except to show that the 1933 Legislature recognized the efficacy of the Publicity Act.

This Act has been before this Court in the following three cases, to wit: Nevada County v. News Printing Co., 139 Ark. 502, 206 S. W. 899; Smackover Journal v. News-Times Publishing Co., 185 Ark. 523, 48 S. W. 2d 219; and Pressley v. Deal, 192 Ark. 217, 90 S. W. 2d 757. We discuss the first two of these cases:

1. Nevada County v. News Publishing Co. was decided in 1918. In that case the County Clerk caused publication to be made as required by the Publicity Act; the newspaper publisher filed in the County Court a claim for the cost of publication; the County Court disallowed the claim; the Circuit Court reversed the County Court; and the case was appealed to this Court. In the opinion here, we pointed out that, under Art. XVI, § 12 of the Constitution, no money could be paid out of the treasury until there had been an appropriation; and that under § 1499, Kirby's Digest, (now § 2527, Pope's Digest[3] and § 17-409 Ark. Stats. of 1947) an appropriation for publication would come under subdivision 7 thereof—i. e., "to defray such other expenses of county government as are allowed by the laws of this State." We held the contract by the County Clerk with the newspaper to be a valid contract requiring no previous authorization of the County Court; but we held that the claim could not be paid by the County Court until an appropriation had

[3] Polk County v. Mena Star Co., 175 Ark. 76, 298 S. W. 1002 is one of the many cases discussing this section of the statutes.

been made by the Quorum Court. This language is apropos:

"The Legislature [4] made it mandatory upon the county clerk to publish in a newspaper a list of all claims allowed against the county, etc. This necessarily gave the county clerk the power to make a contract for such publication. The amount so expended by him became an expense of the county government, and an appropriation made under paragraph seven of section 1499 [5] was available to pay such claim. The record in the present case does not show that any appropriation was made by the quorum court under paragraph seven of section 1499; but, on the contrary, the agreed statement of facts shows that no such appropriation was made."

2. Smackover Journal v. News-Times Publishing Co., *supra,* was decided in 1932. In that case the Secretary of State had caused the synopsis of the Legislative Acts (publication of which was required by § 2 of the Publicity Act) to be published in an unauthorized newspaper. The suit was to prevent such newspaper from receiving payment for the publication. This Court held that a newspaper which failed to have the qualifications prescribed by § 12 of the Publicity Act could not receive payment from the State for the publication. Mr. Justice Kirby, speaking for this Court, said:

"The People had the right to prescribe in said act for the publication of the synopsis and to determine what medium should be used for bringing it to the people's attention; and, having done so, the officer authorized to cause the publication to be made could exercise no discretion about the selection of a newspaper other than as prescribed by the statute for publication.

"Neither is the act violative of the Constitution of the State nor of the United States; and the publication, having been made contrary to the statute authorizing it, created no valid obligation against the State for

---

[4] The reference to the "Legislature" means the People acting as the Legislature.

[5] Reference is to § 1499, Kirby's Digest.

its payment, and no error was committed in granting the injunction prayed for.''

So much for the germane portions of the Publicity Act and our cases construing it. We come now to appellants' claim that the Act is unconstitutional. Appellants contend that, under Art. VII, § 28 of the Constitution, the County Court ''has exclusive original jurisdiction in all matters relating to county taxes . . . the disbursement of money for county purposes, and in every other case that may be necessary to the internal improvement and local concerns of the respective counties.'' Appellants argue that the publication of the claims allowed by the Independence County Court is a matter of local concern, and that the State cannot require Independence County to pay for such publication, if the Quorum Court does not so desire. As will be discussed in Topic III, *infra,* the net effect of this contention would be that a State law, requiring counties to publish claims at the expense of the counties, could be of no validity in any county which did not wish to comply with the State law. Appellants cite the following cases: Lyons Machinery Co. v. Pike County, 192 Ark. 531, 93 S. W. 2d 130; Watson v. Union County, 193 Ark. 559, 101 S. W. 2d 791; Rebsamen v. Van Buren County, 177 Ark. 268, 6 S. W. 2d 288; Allen v. Barnett, 186 Ark. 494, 54 S. W. 2d 399. We agree that an Initiated Act, as regards constitutionality, is to be determined just as though it were an Act of the Legislature, because in adopting an Initiated Act the People become the Legislature, and must legislate within constitutional limits. So the cases involving the constitutionality of legislative acts are applicable here. We list four cases as typical of the many which are authority for holding that the Publicity Act is constitutional as regards the attack here made on it.

(a) In Cain v. Woodruff Co., 89 Ark. 456, 117 S. W. 768 it was claimed that a legislative enactment, requiring the county to pay the sheriff seventy-five cents per day for feeding each prisoner, was void as violative of the county court's power under said Art. VII, § 28 of the Constitution. In holding the Act valid, we said:

"The Legislature, unless restricted by the Constitution, has full and plenary powers to adopt such policies and prescribe the duties which it demands of officers in carrying out such policies which it deems best for the peace and welfare of the People. Straub v. Gordon, 27 Ark. 625; Carson v. St. Francis Levee District, 59 Ark. 513, 27 S. W. 590.

"Aside from the restriction of the State or Federal Constitutions, the Legislature is unfettered in the exercise of legislative power. The question as to whether the enactment is wise or expedient belongs exclusively for the General Assembly to determine. State v. Martin, 60 Ark. 353.

" 'The Constitution regards the county courts as political and corporate bodies that are to be controlled and regulated in their discretion by the acts of the General Assembly, and not as independent of or superior to it. As political and corporate bodies, they are required to conform their action to the rule of the Legislature, and in the exercise of their jurisdiction to proceed in the mode and manner prescribed by law. County of Pulaski v. Irvin, 4 Ark. 475; Hudson v. Jefferson County Court, 28 Ark. 359.' "

(b)  In Crawford County v. City of Van Buren, 201 Ark. 798, 146 S. W. 2d 914 it was claimed that a legislative enactment requiring the quorum courts to appropriate money for municipal court purposes was violative of the said Art. VII, § 28 of the Constitution. In holding the legislative enactment to be valid, we said, in referring to §§ 28 and 30 of Art. VII:

"We do not think, however, that these sections of the Constitution operate to deprive the general assembly of the power to impose duties upon counties and to require counties to pay therefor. Our cases are to the contrary. For instance, in the case of Polk County v. Mena Star Co., 175 Ark. 76, 298 S. W. 1002, there is an enumeration of various items of expenses imposed upon counties by legislative enactment. In the case of Burrow, County Judge v. Batchelor, 193 Ark. 229, 98 S. W.

2d 946, there was involved an act of the general assembly requiring all counties to pay salaries of circuit court and grand jury stenographers. This act was upheld, it being there said that these salaries must be paid as long as there is money in the county general fund to pay them, and that it was not discretionary with the county court to allow them, and that if it failed to do so, the circuit court might compel the county court to perform this ministerial duty.''

(c) Again, in Jackson County v. Nuckolls, 102 Ark. 166, 143 S. W. 1065, there was involved a legislative enactment requiring the county to pay the costs in misdemeanor cases. In upholding that legislation, we said:

''It was within the power of the Legislature to make counties liable for costs in misdemeanor cases tried before a justice of the peace where the parties charged are convicted, and to provide for the payment of such costs out of the funds appropriated for the payment of circuit court expenses.''

(d) In Adams v. Whittaker, 210 Ark. 298, 195 S. W. 2d 634 it was claimed that Act No. 107 of 1945 was unconstitutional because it required the counties to pay the cost of holding the elections required by that Act. We held that the Act was constitutional, and that the counties were liable for the expenses of the election.

It would unduly extend this opinion to cite the many other cases upholding the power of the Legislature to require various items to be paid by the County Court, and to discuss and distinguish the cases cited by the appellant. It is sufficient to say that we do not impair the holding in any of the cases cited by appellants; we merely hold that such cases are inapplicable to the situation here presented. It was not urged in this case that it was beyond the power of the Legislature of 1909 to pass the Act which is now § 2527, Pope's Digest, classifying claims which the county court must allow. That being true, it necessarily follows that it was within the power of the Legislature (that is, the People in this case, in adopting the Publicity Act of 1914) to provide,

in § 9 thereof that "all acts for publication required by §§ 4, 5 and 7 shall be paid by the county in which said publications are made when the same are approved by the County Court, and the respective 'levying courts' are hereby authorized to make appropriations for that purpose." Putting the spotlight of publicity on the list of claims allowed by the County Court in each county through the State was a matter that the People thought desirable. Whether the law was wise is not for the courts to decide. Our holding goes to the fact that the Publicity Act is constitutional in requiring the costs of publication to be paid by the county, just as the Acts imposing other costs to be paid by the respective counties were held constitutional in the cases heretofore discussed.

Although it is not cited in the briefs, nevertheless, we hold that Art. XIX, § 12 of the Constitution directly authorizes the passage of the Publicity Act. That constitutional provision reads: "An accurate and detailed statement of the receipts and expenditures of the public money, the several amounts paid, to whom and on what account, shall, from time to time, be published as may be prescribed by law."

III. *Mandamus.* In their first, second and third points appellants make their several contentions against the granting of the writ of mandamus in this case. These contentions, summarized, are: that the quorum court is a body possessing discretion, and that claims in the seventh subdivision of § 2527, Pope's Digest, are contractual, and that mandamus does not lie to control the discretion of the quorum court on contractual matters. Appellants cite these cases to sustain their contentions: Rolfe v. Drainage District, 101 Ark. 29, 140 S.W. 988; Hodges v. Dawdy, 104 Ark. 583, 149 S.W. 656; Collins v. Hawkins, 77 Ark. 101, 91 S.W. 26; Miller v. Tatum, 170 Ark. 152, 279 S.W. 1002; Worthen v. Roots, 34 Ark. 356; Polk County v. Mena Star Co., 175 Ark. 76, 298 S.W. 1002; Nevada County v. News Printing Co., 139 Ark. 502, 206 S.W. 899.

Without attempting to distinguish these cases, (which this opinion in no respect impairs), we conclude that they do not apply to a situation such as the one existing in the case at bar. Here, the Publicity Act (which we have held to be constitutional) prescribes in §§ 4 and 5 thereof that the clerk of the county court "shall cause to be published, one time in one newspaper published in such county" the certain matters stated in the said sections; and § 13 of the Publicity Act provides "every person who shall fail to comply with the provision of this Act shall be fined in any amount not exceeding $1,000." We held in Nevada Co. v. News Publishing Co., *supra,* that the county clerk could make a valid contract of publication without an order of the county court, because the Act imposed such duty on the clerk; and we held in Smackover Journal v. News Times Publishing Co., *supra,* that the officer charged with having the matters published could exercise no discretion contrary to the statute.

In the case at bar it is admitted by the demurrer that Independence County, at all times herein involved, had ample funds to comply with the Publicity Act, but that the Quorum Court refused to make any appropriation. The result is that the law of the State (the Publicity Act) fails of observance in Independence County. Can a Quorum Court—composed of the County Judge and the Justices of the Peace, according to Art. VII, § 30 of the Constitution—thus defy the Act of the People and render the State law nugatory in a County? The learned circuit court, in awarding the writ of mandamus in this case, used this language in the written opinion:

"If the Quorum Court is not required under the law to make the appropriation then it can simply refuse to do so and totally nullify the provisions of the law and indirectly repeal it. If the Act does what it contemplates an appropriation must be made by the Quorum Court. It is not for the court to say whether the act is a good one or a bad one, but it is the law and should be enforced until repealed by the People who enacted it, or the Legislature. Under the law, as I view it, it is the

duty of the Quorum Court to do its duty and part in seeing to it that the provisions of the law are enforced under penalty provided by the act; that the statute means the Quorum Court should make the necessary appropriation. To hold otherwise would permit said court to nullify the law so far as it applies to a county.

"The clerk has performed his duty and it is the opinion of the Court that the Quorum Court should do its part in making the appropriation. Then the claims of the petitioner can be submitted to the County Judge for his approval before same. can be paid."

We agree with the above quotation. The "discretion" which the Quorum Court had was to withhold appropriation of money to pay the costs of publication until the preferred claims of the County (that is, those in subdivisions 1 to 6, inclusive, of § 2527, Pope's Digest) had been provided for. The complaint in this case alleges, and the demurrer admits, that after all these claims in subdivisions 1 to 6, inclusive, had been paid, there still remained ample funds to pay the publication items arising under the Publicity Act, and that these funds have never been used for any purpose. We hold that the Quorum Court, with ample funds on hand, has no discretion to refuse to comply with a valid law—i. e., the Publicity Act.

We have many cases in which mandamus has been awarded in analagous situations. In Moyer v. Altheimer, 168 Ark. 271, 270 S.W. 91 we held that an order of mandamus could be issued against the County Court to compel that Court to apportion road money under the Act there involved, because under the legislation the County Court had no discretion as to the allowance of the claim. In Manhattan Rubber Mfg. Division v. Bird, Mayor, 208 Ark. 167, 185 S.W. 2d 268, 159 A. L. R. 1257, we held that mandamus would lie against the city to require it to pay a claim. It was there shown that the city had the money with which to pay the claim if it desired, and that the claim was contractual; but we directed that the writ of mandamus be awarded requiring the city to pay the claim prior to other contractual obligations subsequently in-

curred. In the case at bar the claim is contractual, but the Publicity Act required the clerk (under the penalty of heavy fine for failure to do so) to contract with a newspaper for the publication of the claim. On showing here made, that the County has ample funds to pay the claim, the case of Manhattan Rubber Mfg. Division v. Bird, Mayor, *supra,* is clearly ruling.

In No. Ark. Hy. Impvt. Dist. v. Rowland, 160 Ark. 1168, 282 S.W. 990, we held that a writ of mandamus could issue against a county clerk to extend taxes levied by an improvement district; in Chicago Mill & Lbr. Co. v. Drainage Dist., 172 Ark. 1059, 291 S.W. 810, we said that the County Court could be compelled by mandamus to levy the tax; and in Stranahan v. Van Buren County, 175 Ark. 678, 300 S. W. 382, we held that the Quorum Court could be compelled by mandamus to meet as a court and levy a tax for the payment of outstanding bonds of the county. These cases clearly point to the conclusion that mandamus may be used to compel the quorum court and other county officials to comply with the legislative enactments; and such is the situation in the case at bar.

It follows therefore that we reverse, annul and set aside so much of the Circuit Court judgment as directed the writ of mandamus to issue for the 1947 claim of appellee, and we affirm so much of the said Circuit Court judgment as directed the writ of mandamus to issue for the 1948 claim of appellee.