The Honorable John Paul Verkamp State Representative 1495 West Center Greenwood, AR 72936
Dear Representative Verkamp:
I am writing in response to your request for my opinion regarding the extension of a sewer line in the City of Greenwood. You have reported the following factual background:
 The City of Greenwood desires to extend a sewer trunk line through various areas of the City, which are currently without City sewer services. However, some citizens have objected stating that basically the City is improving private property with tax payer money which is prohibited by the Arkansas Constitution and Statutes and that the only way to legally do this is for each property owner using the line, which seems to indicate that this may be prohibited, or at least, each to pay their proportionate share of the cost of the line. The City is aware that sewer improvement districts can be set up, but believe [sic] that the better way to handle the situation, and the preferred way, would be for the City, at their expense, to extend the sewer trunk lines to service those portions of the City without existing sewers.
These facts have prompted you to pose a question I will paraphrase as follows:
 Does either the Arkansas Constitution or the Arkansas Code preclude the City of Greenwood from funding an extension of sewer trunk lines to service portions of the city without existing sewers?
RESPONSE
In my opinion, no principle of constitutional or statutory law dictates that landowners be charged their proportional shares of the cost of constructing sewer trunk lines that service their property. A city might finance a sewer trunk line extension by using either available general revenues or bond proceeds.
Your question is somewhat confusing in that you fail to indicate precisely how the city proposes to finance the sewer extension. Given the uncertainty on this score, I will consider the available alternatives in the ensuing discussion.
The law with respect to municipal sewage systems is set forth at A.C.A. § 14-235-201 et seq. (Repl. 1998 Supp. 2001). This subchapter of the Code grants municipalities authority to "own, acquire, construct, equip, operate, and maintain . . . a sewage collection system or a sewage treatment plant, intercepting sewers, outfall sewers, force mains, pumping stations, ejector stations, and all other appurtenances necessary or useful and convenient for the collection and treatment, purification, and disposal in a sanitary manner of the liquid and solid waste, sewage, night soil, and industrial waste of the municipality." A.C.A. §14-235-203. Other provisions in the subchapter provide for the creation of a sewer committee to supervise the sewer works and its operation and maintenance, A.C.A. § 14-235-206; for the issuance of revenue bonds to pay for the cost of constructing or acquiring the sewage treatment system, A.C.A. § 14-235-215; and for the collection of service rates and charges from citizens to support the system and retire any such revenue bonds issued, A.C.A. § 14-235-223.
In constructing and operating the sewer system, the city is restricted by the following provisions set forth at A.C.A. § 14-235-215:
 (a)(1) Nothing contained in this subchapter shall be so construed as to authorize or permit any municipality to make any contract or to incur any obligation of any kind or nature except such as shall be payable solely from the funds provided under the authority of this subchapter.
 (2)(A)(i) Funds for the payment of the entire cost of the works and for the payment of any extraordinary expenses or liabilities arising from the ownership and operation of the works including, without limitation, liabilities to customers of the works relating to rates charged by the municipality for use of the works shall be provided by funds derived from the operation of the works, by funds of the municipality appropriated for that purpose, and by the issuance of municipal revenue bonds, the principal and interest of which shall be payable solely from the special fund provided in § 14-235-221 for payment.
 (ii) The bonds shall not, in any respect, be a corporate indebtedness of the municipality within the meaning of any statutory or constitutional limitations on them.
As reflected in subsection (a)(2)(A)(1) of this statute, the city has the following available options to finance a sewer trunk line extension of the sort referenced in your request: (1) rates charged users of the system; (2) the proceeds of revenue bonds secured by rate payments;[1]
and available general revenues "appropriated for that purpose." Cf.Manhattan Rubber Manufacturing Division of Raybestos, Inc. v. Bird,208 Ark. 167, 185 S.W.2d 268 (1945) (declaring that a city should not use its general revenues for sewer repair when to do so would defeat its ability to pay the administrative expenses of the city government).
I am unable to determine from your question whether the city anticipates financing the sewer line extension using borrowed funds. If so, various constitutional provisions might apply. Article 12, § 4 of the Arkansas Constitution provides in pertinent part:
 No municipal corporation shall be authorized to pass any law contrary to the general laws of the state; . . . nor shall any mayor, city clerk or recorder, or any other officer or officers, however designated, of any city of the first or second class or incorporated town sign or issue scrip, warrant or other certificate of indebtedness of [sic] excess of the revenue from all sources for the current fiscal year.
* * *
 Where the annual report of any city or county in the State of Arkansas shows that scrip, warrants, or other certificate of indebtedness had been issued in excess of the total revenue for that year, the officer or officers of the county or city or incorporated town who authorized, signed or issued such scrip, warrants or other certificates of indebtedness shall be deemed guilty of a misdemeanor and upon conviction thereof, shall be fined in any sum not less than five hundred dollars nor more than ten thousand dollars, and shall be removed from office.
Section 1 of Article 16 further provides:
 Neither the State nor any city, county, town or other municipality in this State shall ever lend its credit for any purpose whatever; nor shall any county, city or town or municipality ever issue any interest bearing evidences of indebtedness, except such bonds as may be authorized by law to provide for and secure the payment of the indebtedness existing at the time of the adoption of the Constitution of 1874, and the State shall never issue any interest-bearing treasury warrants or scrip.
These provisions are qualified by several constitutional amendments. Amendment 62 authorizes the legislative body of any municipality, "with the consent of a majority of the qualified electors voting on the question at an election called for that purpose," to authorize the issuance of interest-bearing bonds to finance municipal improvements. Amendment 65 further provides in pertinent part:
 1. Any governmental unit, pursuant to laws heretofore or hereafter adopted by the General Assembly, may issue revenue bonds for the purpose of financing all or a portion of the costs of capital improvements of a public nature, facilities for the securing and developing of industry or agriculture, and for such other public purposes as may be authorized by the General Assembly.[2] Such bonds may bear such terms, be issued in such manner, and be subject to such conditions, all as may be authorized by the General Assembly; and the General Assembly may, but shall not be required to, condition the issuance of such bonds upon an election.
* * *
3. Definitions.
 (a) The term "revenue bonds" as used herein shall mean all bonds, notes, certificates or other instruments or evidences of indebtedness the repayment of which is secured by rents, user fees, charges, or other revenues (other than assessments for local improvements and taxes) derived from the project or improvements financed in whole or in part by such bonds, notes, certificates or other instruments or evidences of indebtedness, from the operations of any governmental unit, or from any other special fund or source other than assessments for local improvements and taxes.
Finally, Ark. Const. amend. 78 provides in pertinent part:
 Section 2.(a) For the purpose of acquiring, constructing, installing or renting real property or tangible personal property having an expected useful life of more than one (1) year, municipalities and counties may incur short-term financing obligations maturing over a period of, or having a term not to exceed[,] five (5) years.
Subsection 2(a)(2) of the amendment expressly provides that annual principal and interest on outstanding obligations incurred pursuant to this provision "shall be charged against and paid from the general revenues for such fiscal year."[3] Insofar as Amendment 78 does not require that the financing be by revenue note, it broadens the range of permissible financing of loans for improvements of the sort that fall within its ambit.
Specifically in response to your question, then, I believe the city might itself finance the sewer trunk line extension either from available general revenues or through any of the other alternatives discussed above. With respect to the question of whether such an extension might be characterized as impermissibly "improving private property," I will note that the city is statutorily authorized to acquire the property through which the extension would pass "by gift, grant, purchase, condemnation, or otherwise. . . ." A.C.A. § 14-235-205(a)(1). As for your constituents' concern that residents benefited by the extension should be responsible for "their proportionate share of the cost of the line," A.C.A. §14-235-304 expressly provides that a property owner can be charged only with the cost of tying into an existing sewer line within three hundred feet of his property. In my opinion, the Code does not envision directly charging adjoining landowners with any proportional cost of constructing a main sewer line serving their property. I believe the costs of such construction by the city might be defrayed using either general revenues or the rates and charges for services authorized at A.C.A. § 14-235-223.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JD/cyh
[1] The Code provides that these rates "shall be sufficient in each year for the payment of the proper and reasonable expense of operation, repair, replacements, and maintenance of the works and for the payment of the sums required in this subchapter to be paid into the [bond repayment] sinking fund." A.C.A. § 14-235-223(b).
[2] The procedural requirements for the issuance of such bonds are set forth at A.C.A. §§ 19-9-601 through — 607.
[3] Subsection 2(c) of the amendment provides that "[t]he provisions of this section shall be self-executing." Section 3 further provides that the amendment authorizes that the described means of incurring interest-bearing debt is "in addition" to those specified elsewhere in the constitution and statutory law. In authorizing municipalities to incur interest-bearing debt, Amendment 78, like Amendment 65, supersedes A.C.A. §§ 14-58-401 and 14-58-403(a), which restrict cities of the first class to issuing only non-interest-bearing evidences of indebtedness.